## HOTEL COMPANY *v.* WADE.

1. Bonds issued by a corporation in Nebraska, secured by a mortgage on its lands there situate, were held by citizens of another State, who, on default of the corporation to pay the interest represented by the coupons, applied to the trustee named to take possession of the lands, pursuant to the mortgage, and bring a foreclosure suit. On his refusal, they filed their bill Sept. 24, 1873, in the Circuit Court, against him, the corporation, and the other bond and coupon holders, all citizens of Nebraska, who refused to join in bringing suit. *Held*, that the complainants had the right to file their bill, and that the court below had jurisdiction, although some of the respondents were joined as such solely on the ground that they had refused to unite with the complainants in the prosecution of a suit to compel the trustee to foreclose the mortgage.
2. Where stockholders sanctioned a contract, under which moneys were loaned to a corporation by its directors, and its bonds therefor, secured by mortgage, given, and the moneys have been properly applied, the corporation is estopped from setting up that the bonds and mortgage are void by reason of the trust relations which the directors sustained to it.
3. In order to sustain the defence of usury when a contract is, on its face, for legal interest only, there must be proof that there was some corrupt agreement, device, or shift to cover usury, and that it was in full contemplation of the parties.

APPEAL from the Circuit Court of the United States for the District of Nebraska.

This is a bill filed Sept. 24, 1873, by Jeptha H. Wade, a citizen of Ohio, and James W. Bosler, a citizen of Pennsylvania, against the Omaha Hotel Company, a corporation of Nebraska, Milton Rogers, Thomas Wardell, Edward Creighton, Augustus Kountze, Herman Kountze, Andrew J. Poppleton, Henry W. Yates, Edward D. Pratt, Charles W. Hamilton, and others, citizens of that State, to foreclose a mortgage of certain lands in Omaha, and the hotel and other buildings then or thereafter to be erected thereon, executed by that company Sept. 1, 1871, to said Rogers, as trustee, to secure one hundred coupon bonds for $1,000 each, issued by it, and payable in five years, with interest at twelve per cent per annum, payable September 1 and March 1 in each year. It was, among other things, covenanted that the company should keep the hotel insured for not less than $100,000, by good and responsible companies, and assign the policy for the benefit of the bond-

holders; that it should pay all taxes and assessments, general or special, on the premises; and that the sum raised by the mortgage should, under the management, direction, and control of the company, be faithfully and honestly applied to the completion of the hotel. The condition was, that if the company " shall well and truly pay the interest on said bonds, as it becomes due, and the principal at maturity, and perform each and every other covenant and agreement herein, then this con veyance shall be void; otherwise, to remain in full force and effect. And in case of a failure to pay the interest according to the tenor and effect of said bonds, or to perform any other covenant or agreement herein contained, then, in that case, not only the interest but the principal of said bonds shall become due and payable; and the said party of the second part or his successors shall have the right to take immediate possession of said property, foreclose this mortgage, and sell said mortgaged premises." . . .

The bill alleges that the bonds were, immediately upon their execution, delivered to Creighton and other parties, who advanced the $100,000, which was duly expended by the company as required by the mortgage; and that on July 25, 1873, Wade, in the usual course of business, and without knowledge of any defences thereto, purchased in good faith from Creighton thirty-five of the bonds, and that on the 23d of that month, Bosler, in like manner, purchased from Augustus Kountze forty of them, both purchases having been made without any knowledge, suspicion, or reason to suspect that any overdue coupons theretofore attached to said bonds had not been paid, and that Wardell holds the remaining twenty-five bonds. It also alleges that, save that due March 1, 1872, no interest has been paid on the bonds, but that the past-due coupons are held by Creighton, Augustus Kountze, Herman Kountze, and Yates, who claim to be interested in the security of the mortgage; that the coupons held by the complainants, and due Sept. 1, 1873, were duly presented by them for payment, and payment having been refused, they were protested, and notice thereof given to the company; that default was made in the payment of State and county taxes due on the property in December, 1872, on which account it was sold, Sept. 8, 1873, Augustus Kountze

becoming the purchaser, and that it was again, on the 18th of that month, sold for the non-payment of taxes to the city of Omaha; that since Sept. 5, 1873, the premises have been insured but for $40,000; and that the company has, by the foregoing and other breaches of its covenants, caused the principal as well as the interest of the bonds to become due and payable. It further alleges that the complainants applied to the said trustee to take possession of the premises, and bring an action to foreclose the mortgage, offering to indemnify and save him harmless from all costs and expenses, but that he refused so to do; and that they applied to Wardell, Creighton, Poppleton, Augustus Kountze, Herman Kountze, and Yates to join in such a suit, but that they and each of them declined. The bill prays for a receiver, an account, a sale of the mortgaged premises, and general relief.

Separate answers were filed by Pratt and Hamilton, by Caldwell and others, and by the Hotel Company. The answer of the latter, after insisting that the bill was defective for want of proper parties, and that therefore the court had no jurisdiction of the suit, sets up certain defences, which are stated in the opinion of the court.

There was a decree for the complainants; whereupon the Hotel Company, and certain other of the respondents, brought the case here.

*Mr. Clinton Briggs* for the appellants.

In order to sustain the jurisdiction of the court below, each and all of the bond and coupon holders were indispensable parties complainant. The practice of courts of general jurisdiction, where those who refuse to join as complainants may be impleaded as defendants, cannot obtain in the Circuit Court of the United States, where jurisdiction depends upon the citizenship of the parties. There the controversy must be between citizens of different States, not between those of the same State. The only difficulty is, to determine who are and who are not indispensable parties. *Russell* v. *Clark's Executors,* 7 Cranch, 69; *Shields et al.* v. *Barrow,* 17 How. 130; *Coal Company* v. *Blatchford,* 11 Wall. 172; *Knapp* v. *Railroad Company,* 20 id. 117; *Case of the Sewing-Machine Companies,*

18 id. 553; *Williams et al.* v. *Bankhead*, 19 id. 563; *Ober* v. *Gallagher*, 93 U. S. 199.

The act of March 3, 1875, enlarging the jurisdiction of the Circuit Court, does not change the rule that each plaintiff. must be competent to sue, and each defendant liable to be sued.

In a matter so vital as that of jurisdiction, the court will consider who are the real actors. *McNutt* v. *Bland et al.*, 2 How. 9; *Huff et al.* v. *Hutchinson*, 14 id. 586.

The bonds and mortgage are invalid, by reason of the trust relation which the lenders of the money, who were a majority of the board of directors of the company, sustained to the stockholders. *Michoud et al.* v. *Girod et al.*, 4 How. 503; *Koehler* v. *Black River Falls Iron Co.*, 2 Black, 715; *Drury* v. *Cross*, 7 Wall. 299; *Jackson* v. *Ludeling*, 21 id. 616; *Stephen* v. *Beall*, 22 id. 329; *Twin-Lick Oil Co.* v. *Marbury*, 91 U. S. 587; *Luxemburg Railroad Co.* v. *Macquay*, 25 Beav. 586; *Cumberland Coal Co.* v. *Sherman*, 30 Barb. (N. Y.) 553; *Railroad Company* v. *Poor*, 59 Me. 277; *San Diego* v. *Railroad Company*, 44 Cal. 106; *Goodwin* v. *Railroad & Canal Company*, 18 Ohio St. 182.

The interest contracted for and received by the lenders of the money was usurious. *Bank of the United States* v. *Owens et al.*, 2 Pet. 527; *Brown* v. *Vanderburgh*, 43 N. Y. 195; *Creig* v. *Bliss*, 26 Pa. 271; *Feidler* v. *Darrin*, 50 N. Y. 437.

*Mr. J. M. Woolworth, contra.*

MR. JUSTICE CLIFFORD delivered the opinion of the court.

Jurisdiction of the circuit courts, concurrent with the courts of the several States, under the existing act of Congress, is extended, where the matter in dispute exceeds the sum or value of $500, to all suits at common law or in equity in which there shall be a controversy between citizens of different States, without any exception or qualification, employing the very words contained in the Constitution. 18 Stat. 470; Const., art. 3, sect. 2.

Motives of a public character induced certain residents of the city of Omaha to become organized as a corporation, to facilitate their efforts to erect a hotel at that place. Expendi-

tures to a large amount were incurred by the Hotel Company in purchasing the lot and in erecting and enclosing the building; and, being unable to complete the same without pecuniary aid from others, they decided to mortgage the premises to raise the necessary funds for the purpose.

Arrangements were first attempted, and partly perfected, to make a loan of $75,000; but it was soon after determined that it would require $25,000 more to accomplish the object. Negotiations of various kinds ensued, which resulted in a vote of the stockholders in favor of the proposition ultimately carried into effect, to borrow $100,000 to complete the hotel.

Action of a corresponding character was had by the board of directors; and they voted to accept the proposition made to the stockholders, and directed the president and secretary of the company to execute, acknowledge, and deliver to Milton Rogers, trustee, a mortgage or trust deed of the hotel lot and building, as more fully set forth in the record.

Bonds of the company executed to bearer, with interest coupons attached, to the number of one hundred, each for the sum of $1,000, with interest at the rate of twelve per cent, payable semi-annually, were issued, the principal payable in five years, with the privilege to the company of paying the same two years earlier. Payment of the bonds, principal and interest, was secured by the mortgage or trust deed executed by the president and secretary of the company, in pursuance of the aforesaid vote of the board of directors to carry into effect the proposition previously adopted by the stockholders at their meeting duly notified and held for the purpose.

Covenants alleged to have been broken are the following: 1. That the company shall keep the hotel building insured in good and responsible companies, to be agreed between the parties, in the sum of not less than $100,000, and that the company shall assign the policies to the trustee, for the benefit of the holders of the bonds. 2. That the company shall pay all taxes and assessments upon the mortgaged premises. 3. That the sum raised by the mortgage shall be applied to the construction and completion of the hotel building. 4. That the company shall well and truly pay the interest as it becomes due, and the principal at maturity; and the instrument provides that in case

of failure to pay the interest or to perform any other of the covenants or agreements therein contained, then in that case not only the interest but the principal shall become due and payable, and the trustee shall have the right to take immediate possession of the property, foreclose the mortgage, and sell the mortgaged premises.

Specific breaches of the covenants of the instrument are alleged, and failures, neglects, and refusals of the company to perform the same, in consequence of which the complainants aver and charge that the principal as well as the interest of the mortgage debt has become due, and that they are entitled to a decree foreclosing the mortgage.

Service was made, when most of the respondents entered an appearance, and two of the respondents, to wit, E. D. Pratt and Charles W. Hamilton, filed an answer. Certain interlocutory proceedings followed, which it is not material to notice in this investigation. Six other respondents subsequently appeared and filed an answer, and at a still later period the Hotel Company appeared and filed their answer. Special reference need only be made to the answer of the Hotel Company, as the other two answers relate chiefly to the application for a receiver.

Four principal defences were set up by the company: 1. That the Circuit Court had no jurisdiction of the case. 2. That the bonds and mortgage were void because of the trust relation which the lenders of the money sustained to the stockholders. 3. Because the lenders of the money contracted for and received usurious interest. 4. That the complainants were not *bona fide* holders of the bonds, and that the bonds do not equitably bind the Hotel Company.

Due process was served, and it is conceded that the respondents who did not answer suffered the bill of complaint to be taken as confessed. Without unnecessary delay, the complainants filed the general replication, and proofs were taken on both sides. Hearing was had upon bill, answer, replication, and proofs; and the Circuit Court entered a decree in favor of the complainants, as fully set forth in the record, the details of which are not material to the questions to be decided in this court.

Prompt appeal was taken by the respondents; and since the cause was entered here they have filed as an assignment of errors the rulings of the Circuit Court in overruling the four defences set up in the answer of the Hotel Company, the first being that the Circuit Court had not jurisdiction of the case, by which is meant that proper parties are not made in the bill of complaint to enable the Circuit Court to decree the relief for which the complainants pray.

Want of proper parties is the true nature of the alleged error, the principal defects specified being the following: 1. That the suit is in the name of certain bondholders, and not in the name of the trustee designated in the mortgage. 2. That the other bondholders are not joined as complainants in the suit.

Application was made to the trustee by the complainants to take possession of the mortgaged premises, and to bring an action in proper form for the foreclosure of the deed of trust and for the sale of the premises; and they allege that he refused to comply with their request, notwithstanding that they offered to indemnify him and save him harmless.

Sufficient appears to show, beyond controversy, that the complainants had a right to have suit for a foreclosure in the name of the trustee; and having applied to him for that purpose, and he having refused to perform his duty, the complainants, with the other parties interested in the security, might properly become the actors in such a suit against the mortgagor, impleading the trustee also as a respondent. Resident parties interested to foreclose the mortgage or trust deed also refused to join in the suit with the complainants, and they were joined as respondents with the Hotel Company and the recusant trustee.

Circuit courts, it is admitted, have jurisdiction, under the judiciary act, of all suits of a civil nature, at common law or in equity, where the amount in dispute is sufficient, and the suit is between a citizen of the State where the suit is brought and a citizen of another State. 1 Stat. 78. Words and phrases of a much wider signification are used in the recent act of Congress defining the jurisdiction of the circuit courts, which provides that those courts shall have original cognizance, concurrent

with the courts of the several States, of all suits of a civil nature, at common law or in equity, where the matter in dispute exceeds the sum or value of $500, and in which there shall be a controversy between citizens of different States. When the decree in this case was entered, the latter provision was in operation, but the suit was commenced before the act which contains it was passed. 18 id. 470.

Tested by either provision, the court is of the opinion that the objections to the jurisdiction of the Circuit Court cannot be sustained, as the respondents are citizens of the State where the suit is brought, and the complainants are citizens of other States; nor does it make any difference that some of the respondents were joined as such because they refused to unite with the complainants in the prosecution of the suit. Equity practice in such cases is more flexible than the rules of pleading at common law, and often enables a complainant in equity to maintain the jurisdiction of the court in a case where a plaintiff in an action at law would find it to be difficult to do so, and perhaps impossible.

Argument to show that the case made in the record shows that the holders of the overdue and unpaid securities were entitled to sue for the foreclosure of the mortgage or trust deed is unnecessary, as the pleadings and proofs are full and decisive to that effect; and if so, then it is clear that the complainants, under the circumstances of this case, might select the Circuit Court as the forum for the adjudication of their rights.

Holders of such securities otherwise entitled to sue in the Circuit Court to foreclose the mortgage or trust deed are not compelled to join as respondents other holders of similar securities, if resident in other States, even if they refuse to unite as complainants, as the effect would be to oust the jurisdiction of the court. Cases of the kind frequently arise; and the rule is that such a party, if he refuses to unite with the complainant, may be omitted as a respondent, unless it appears that his rights would be prejudicially affected by the decree. But it is suggested that the proper parties for a decree are not before the court, as the bill of complaint shows that there are other holders of the securities besides the complainants.

It is true, beyond doubt, that all persons materially interested in the fund to be distributed should be made parties to the litigation; but this rule, like all general rules, will yield whenever it becomes necessary that it should be modified in order to accomplish the ends of justice.  Authorities everywhere agree that exceptions exist to the general rule; and this court decided that the general rule will yield if the court is able to proceed to a decree and do justice to the parties before the court, without injury to others not made parties, who are equally interested in the litigation.  *Payne* v. *Hook*, 7 Wall. 425.

Examples of the kind are put by Judge Story, in his work on Equity Pleading.  Speaking of a bill brought by one of several residuary legatees for a final settlement and distribution of the estate of a testator or intestate, he says, all the residuary legatees or distributees ought in general to be made parties; but he admits that, if some are out of the jurisdiction of the court and cannot conveniently be joined, the court will dispense with them, and proceed to decree the shares of those before the court, the rule being that the decree is conclusive only as to those who are parties to the litigation.  Story, Eq. Pl., sect. 89; *West* v. *Randall*, 2 Mas. 193; *Wood* v. *Dummer*, 3 id. 308.

Parties who are not named may intervene and make themselves actual parties, so long as the proceedings are *in fieri* and are not definitely closed by the course and practice of the court.  *Campbell and Others* v. *The Railroad Company*, 1 Woods, 369.

Suppose that is so, then it is insisted that the bonds and mortgage are invalid because the lenders of the money sustained a trust relation to the stockholders.

Voluminous as the proofs are, it is scarcely possible to enter into the details of the evidence without extending the opinion to an unreasonable length, nor is it necessary, as we are all of the opinion that the finding of the circuit judge in respect to the theory of fact involved in the present proposition is correct. His finding is that the bonds and mortgage are not void upon the ground that the lenders of the money were also the directors of the company; that the terms of the contract were sanc-

tioned by the stockholders; and that the money loaned was needed to complete the building, and that it was applied to effect the purpose for which it was borrowed.

Preliminary to any action in the matter, the proposition for the loan was submitted to the stockholders, and the record shows that it was adopted by a stock vote. Stockholders and directors knew what amount was to be borrowed, and all the terms and conditions of the contract, and that bonds payable to bearer were to be issued for the loan, and that the bonds were to be secured by a mortgage or trust deed of the hotel property. All knew that a loan was indispensable to the completion of the building, and all were anxious that it should be effected without further delay.

Differences of opinion existed among the stockholders as to the best way of raising the money, and prior discussions had not tended to quiet the dissensions, but the stockholders at the meeting referred to decided to adopt the proposition which was carried into effect. Beyond doubt, some of the conditions of the proposition were somewhat peculiar, but the proofs show that it was openly submitted to the stockholders, and that they adopted it by a majority of their votes; that the bonds were subsequently issued, and that they were voluntarily secured by the mortgage or trust deed set forth in the record.

Taken as a whole, the proofs satisfy the court that the money was advanced in good faith, and that the bonds were duly executed and delivered; nor is the legality of the transaction affected by the fact that others of the directors besides the party who submitted the proposition took certain proportions of the bonds and furnished corresponding proportions of the money. It was the company or their agents that prescribed the form of the bonds, and, having issued the same in the form of negotiable securities, it must have been expected that they would be negotiated in the market. Enough appears, also, to warrant the conclusion that the stockholders were more interested to raise the money than to ascertain who would become the holders of the bonds.

Examined in the light of the circumstances attending the transaction, as the case should be, the court is of the opinion that the evidence fails to support the proposition that the bonds

and mortgage are invalid because the directors became the holders of the bonds and advanced the money. Transactions of the kind have often occurred; and it has never been held that the arrangement was invalid, where it appeared that the stockholders were properly consulted, and sanctioned what was done, either by their votes or silence. *Stark & Wales* v. *Coffin*, 105 Mass. 328; *Credit Association* v. *Coleman*, Law Rep. 5 Ch. 568; *Troup's Case*, 29 Beav. 353; *Hoare's Case*, 30 id. 225; *Smith* v. *Lansing*, 22 N. Y. 520; *Busby* v. *Finn*, 1 Ohio St. 409.

Most of the directors who took the bonds and advanced the money were owners of stock in the bank where the money when paid to the use of the company was deposited. Interest not having been paid on the deposits, it is insisted by the respondent company that the transaction was usurious; but the court is not able to sustain the proposition, as there is no evidence that any agreement was ever made that the money should be deposited in that bank. Usury, certainly, is not to be favored; but the rule is well settled, that, when the contract on its face is for legal interest only, then it must be proved that there was some corrupt agreement, device, or shift to cover usury, and that it was in full contemplation of the parties. *Bank of the United States* v. *Waggener*, 9 Pet. 378.

Nor is that rule at all inconsistent with what was previously decided by the court. Profit made or loss imposed on the necessities of the borrower, whatever form, shape, or disguise it may assume, where the treaty is for a loan and the capital is to be returned at all events, has always been adjudged to be so much profit taken upon the loan, and to be a violation of those laws which limit the lender to a specified rate of interest. *Bank of the United States* v. *Owens*, 2 Pet. 527; *Dowdall* v. *Lenox*, 2 Edw. (N. Y.) Ch. 267.

Much depends upon the intent of the parties in the transaction. Consequently, where a certificate of deposit was given, payable at a future day, it was held not to be usury, it appearing that it was given at the request of the depositor, and for his accommodation, without any intent to secure usury. *Knox* v. *Goodwin*, 25 Wend. (N. Y.) 643.

Decided cases also establish the rule that the withholding a

part of a loan for a time in violation of the agreement of the parties does not constitute usury, as the retention of the money was no part of the contract or loan. *Adm'r of Auble* v. *Trimmer*, 17 N. J. Eq. 242; *Executors of Howell* v. *Auten et al.*, 1 Green (N. J.) Eq. 44.

So where checks were drawn before the discount was made and deposited, and the bank treated the note as discounted at the date of the checks, the court held that it was not usury, as the circumstances negatived any unlawful intent. *Walker* v. *Bank of Washington*, 3 How. 62.

When the bonds were converted into money, the proceeds were deposited in the aforesaid bank, which, no doubt, resulted in an incidental advantage to the directors owning portions of the capital stock; but that matter was adjusted in the decree to the satisfaction of the court, and may be dismissed without further comment. Some delay ensued after the bonds were issued before the money was deposited; but nothing of the kind was contemplated when the agreement was made, nor did it take place as a means of increasing the rate of interest.

Other defences failing, the suggestion is that the complainants are not *bona fide* holders of the securities for value; but the suggestion is unsupported by proof, and, of course, cannot prevail, the burden of proof being upon the respondent company. *Goodman* v. *Simonds*, 20 How. 343; *Collins* v. *Gilbert*, 94 U. S. 753.

Suffice it to say, there is no error in the record.

*Decree affirmed.*