Sedgwick, Ch. J. [After reference to a question of practice.]
The respondent claims that upon the ap *425 peal, it is proper to examine the complaint to see if it contained a statement of any cause of action. The appellant, on the other hand, maintains, that such an examination cannot here be made, because an original complaint was demurred to by the defendant and the demurrer was overruled; that the present amended complaint contains the statements that in the original complaint were held to set forth a cause of action, and that, therefore, it stands, as the law of the case, that the present complaint gives a cause of action apparently. The original complaint having been, by force of its amendment, withdrawn, the demurrer to it and the decision thereon are taken from the case. The present respondents have been deprived by the amendment of an opportunity to be heard by appeal as to the correctness of the decisions of the demurrer.
Clearly, upon the question as to whether an interlocutory judgment against the plaintiff is correct, the defendants have a right to show, that, on the face of the record, the plaintiff can never be entitled to final judgment.
The learned counsel for the appellants states the claim of the complaint as follows. The plaintiff sues on behalf of himself and all other stockholders of the corporation defendant, alleging that the individual defendants, then being trustees of the said corporation, immediately after the organization thereof, by agreement with one Catlow, issued to him, the whole capital stock of said corporation, viz.: §2,000,000 in exchange for property worth not to exceed $150,000. That 90,000 shares of the stock vrere turned over to the defendant Hayes and his associates, and 20,000 shares to the defendant corporation by said Catlow, without payment therefor, in pursuance of the real agreement between the parties, for the purchase of property and the issue of stock. That the individual defendants knew, or could have known, the value of *426 the property and that a portion of the stock was to be 1 turned over as stated. That the defendants’ trustees ■' represented the stock as full paid, and that the stock i has been sold as full paid to innocent purchasers, including the plaintiff. That the plaintiff purchased his stock regularly in the open market, relying upon such representations, and received regular certificates, and that the stock was regularly transferred to him on the ■ books of the corporation. That the individual defendants have received large gains and profits from the sale of that portion of the stock turned over to them. That the individual defendants have sold the stock turned over to the defendant corporation, or a large portion of it, at one dollar per share. That the individual defendants have not accounted for the difference between the value of the stock and the amount of property received (except as to the one dollar a share received from the treasury stock), nor for the gains and profits received by them from the sale of the stock turned over to them. That the corporation defendant is still under the control of the individual defendants.
. The defendants among other defenses pleaded that \ plaintiff purchased his stock knowing the facts attending the transaction set out in the complaint.
By the terms of the complaint the plaintiff sues for himself and “all other stocldiolders of the defendant company who may choose to come in and avail them- * selves of the benefits of the action.” ’ The plaintiff is excused from naming all of these stockholders, on account of the inconvenience of 'making a great number of persons parties, but in legal contemplation, all of them are parties plaintiff, and all of them are in like case with the plaintiff named. These persohs are stock- ' holders, as it is called, having become so by transfer of shares from Catlow, remotely or directly, and Catlow himself, if he has not transferred all his stock, unless *427 as to Catlow, he is not to be deemed a party because he is not in like case with the plaintiff.
It will be convenient first to inquire, if Catlow as a plaintiff, could have maintained such an action. The facts would have been that previous to the impeached issue of certificates of shares, the corporation would have been in existence by virtue of the statute which declares (L. 1848, c. 40, § 2; 3 Edm. St. 733), that when the certificate shall have been filed, the persons who shall have signed and acknowledged the same, and their successors shall be a body politic and corporate in fact and in name, by the name stated in such certificate, and by that name have succession and shall be capable of suing and being sued, and they and .their successors may have a common seal, and they shall by their corporate name be capable in law of purchasing property, &c.
There was no stock or capital, and there could be none, excepting by third persons paying money or property for certificates of shares of the capital issued to them. There were then, of course, no shareholders. Catlow and the trustees of the corporation, which by the statute were the corporation, made an agreement that was carried out, that certificates should be issued to him by the trustees, which should represent that he was the owner of the whole number of shares of the capital stock, or 200,000 shares of the stock which by the certificate of incorporation was to be $2,0Q0,000, and he should convey to the company, mining claims and property, which in fact had no greater value than $150,000, as the parties to the transaction knew. In substance Catlow subscribed for the whole of the shares, agreeing to pay therefor only property of the value named.
The statute declared that only money should be taken by the trustees to the nominal amount of the shares issued, or property,^ the actual value of which. *428 was equal to that nominal amount. The agreement was unlawful and its execution could, not have been enforced by either party to it. It was in fact made and executed to evade the statute.
It was a part of the agreement that, upon the certificates being issued to Catlow, he should transfer to some of the trustees certain shares. The trustees received these shares from Catlow, and afterwards sold them for large sums of money for their own benefit.
Upon the certificates being issued to Catlow, he would become a shareholder. Át least it is necessary to suppose, that although the transaction was forbidden by law, yet it was in fact done, and by it Catlow became a shareholder.
Upon the supposition that Catlow, being the owner of all the shares excepting such as he had transferred to the trustees, brought his action, he would claim that he had a right to demand that the company should bring an action against the trustees to compel them to pay the company money, sufficient, with the value of the mining property, to amount to $2,000,000, which was by the certificates to be the capital, and also pay to the company, the amounts of money for which they had sold the shares he had transferred to them.
As the action would be by him declared to be for his benefit, it would ordinarily be necessary to say no more than that he was not entitled to be benefited through claiming an interest in what may be called damages for an act in which he had taken part, and, indeed, which he had promoted.
But certain positions have been taken for the present plaintiff, which would apply to' Catlow, and these may be now examined.
It is said for the present plaintiff that the transaction was unlawful and invalid, and cannot be made lawful or be validated. If that be so, it would be true *429 in the case of Catlow. It is nevertheless also true, that there is nothing unlawful or invalid in the parties to an unlawful arrangement, being without a right to share in damages, to use a convenient word, which have flowed from the unlawful act.
There is at this point a distinction, taken for the plaintiff, between the right of the corporation to damages, and the right of a party consenting to the wrong, being entitled to damages.
It is said that a corporation is an artificial person, a legal entity entirely different and distinct from the persons of which it is composed, and the corporation as a distinct person may be injured by one or all of its members, and in either case has a right of action. Without stopping to ascertain the real meaning of this definition of a corporation, and assuming the other proposition to be correct, it has further to be ascertained if the corporation has been injured in the transaction or has suffered damage.
The injury or damage, in one direction, would be the consequence of issuing certificates by an invalid act that, on the assumption of the plaintiff’s argument, is incapable of ratification. If this be a void act, then it would be necessary to say, that the certificates issued were void, and the corporation cculd now proceed to issue certificates of shares in a legal manner. But such a view would disclose that Catlow or the plaintiff would not be a shareholder, and, therefore, not entitled to bring such an action as the present.
Such an injury, of course, is not claimed, but it is claimed that the injury was the trustees’ issuing for property of small value certificates to the nominal amount of $2,000,000 whereas it was the duty of the trustees not to issue them except for §150,000. The complaint does not allege, nor can it be presumed, that, if the certificates had been properly dealt with, any more could have been procured for them than was *430 in fact, and therefore it does not appear that any pecuniary damage was suffered. Or, in other words, j it does not appear, that if the trustees had performed ! their duty of not issuing except for equivalent value, that the corporation would have had more capital than now.
Excepting these considerations, it may be supposed that there was damage to the company from the trustees’ acts. Was there any injury under the facts ?
It is true that the corporation is something more than its trustees and shareholders, but its property, chattels, money or choses in action it owns, not in its own interest, but for the pecuniary, benefit of the natural persons connected with it. It would be impossible to look upon the. property rights of a corporation merely having regard to its being an ideal creature. It acts through natural persons. It acts for the benefit of natural persons. In truth, natural persons compose it. The statute under which it was formed says this.
The trustees, who are trustees under the statute .for the corporation, are the trustees for the shareholders. In Karnes v. Rochester & Genesee Valley R. R. (4 Abb. Pr. N. S. 107, 111), the court said, “The directors stand in the relation of trustees to the stockholders, and between them exists the relation of trustee and cestui que trust.” As for this Butts v. Wood (38 Barb. 181, afterwards affirmed 37 N. Y. 317), was quoted, it must have been said upon an identification of the stockholders and the corporation.
The same case said, p. 110 : “The corporation does not stand in any fiduciary relation to its stockholders. Such a relation, between the corporation and its corporators, is shown in a well considered opinion by Vice-Chancellor McComsr, in Verplanck v. Mercantile Ins. Co. (1 Edw. Ch. 85, 87), to be impossible. The stockholders are in no sense creditors of a corporation, nor *431 are they in the situation of partners. They are constituent parts of the corporation.”
The language of Vice-Chancellor MoCoun, in Verplanck v. Mercantile Ins. Co. (1 Edw. Ch. 85, 87), was: 61 The corporation is merely the creature of the law, a political body, not a natural body, made up of the compact entered into by the stockholders, each of whom becomes a corporator identified with and forming a constituent part of the corporate body, and therefore when we speak of stockholders and the incorporated company of which they are the components, wre refer to one and the same collection of persons. How then can the relation of trustees and cestui que trust exist for such a relation requires separate and distinct persons or separate and distinct bodies to constitute it.” This case afterwards affirms that the directors are the agents and trustees of the corporation or stockholders.
In Railway Company v. Allerton (18 Wall. 233, 234), the charter declared that all the corporate powers of the corporation shall be vested in and exercised by a board of directors, &c., and it also declared that the capital stock of the corporation may be increased from time to time at the pleasure of said corporation. The court held that the capital could not be increased by the directors without the consent of the shareholders. The opinion said that the corporation, like a partnership, is an association of natural persons, and that fundamental changes of corporate purposes cannot foe made without the express or implied consent of the members.
Again, considering that the fundamental position is, that Oatlow became, in fact, shareholder to the amount of all the capital stock, the following was the relation between the parties : the corporation was the holder of the legal title of the property of the corporation, subject to corporate uses. Excepting this legal title for corporate uses, the shareholders were the *432 parties interested in the property, in fact, owning all of it, excepting the legal title, which, as against them,
. could be used for corporate purposes. The trustees were the statutory corporation. The shareholders were members or a part of the corporation. The corporation held the legal title for the pecuniary benefit of the shareholders having no beneficial or pecuniary benefit in it.
On the claims for the plaintiff, the thing possessed is the right of the corporation to have an action against its trustees for damages for their acts, which it is claimed were wrongful to the corporation. This right, if it existed, was held by the same tenure and for the same purposes that other property would be held. The corporation would have a bare title to it for the beneficial use of shareholders. It seems to be evident, that the corporation could not claim as damage to its interest what would be damage to the benefioial interest, when the owners of the latter had con-, sented to the so-called injury. In fact, however, the case is a little different in point of circumstance, although not essentially. The beneficial owner or shareholder having in advance of the occurrence, which but for their participation would have created a cause of action in the corporation, promoted it and then participated in it, the conduct of the trustees never made a cause of action because that \ conduct ivas not wrongful as respects the shareholders 'The principles that have now been used are established by Scott v. Depeyster (1 Edw. Ch. 513); Hotel Co. v. Wade (97 U. S. 13) ; Kent v. Quicksilver Mining Co. (78 N. Y. 159). It is not necessary to give the reasoning of these cases; they are applicable here. It is supposed that in the last case there is a difference, in that acquiescence of shareholders was held to estop them in favor of innocent third parties. But it must be considered that after the power to ratify or ac *433 quiesce is held to exist, the same principle would act in favor of third parties although not innocent, against whom damages for the act ratified were claimed.
It seems to be clear that Catlow could not maintain an action like this, first, because he could not claim that the corporation should bring an action for his benefit on account of a transaction which he took part in, and, second, because the corporation would have no cause of action or rigli t to damages.
If the second proposition be true, then it necessarily follows, there never having been any cause of action, or the right to damages having never accrued, that the claim cannot be revived in the future in favor of any person, whether or not a transferee of shares from Catlow.
The plaintiff, however, because he claims through a transfer from Catlow, cannot bring an action which Catlow could not have brought upon this case. .
In Mann v. Currie (2 Barb. 294,298), the court said of the defendant,-that if he became a stockholder by transfer to him of the stock of an original subscriber, lie at once adopted his contract with the company, and became substituted in his place, both as regards his rights and liabilities. This was said in relation to the obligations of the defendant to fulfil the terms' of the original subscription of his assignor.
The reasoning that tends to the application of this conclusión in this case is just, and seems to be clear. The shares which the plaintiff holds, came to him through a certificate which ivas issued upon a particular arrangement, under which the plaintiff claims, necessarily admitting it to have been effective. One feature of that arrangement was that the cerfificáte should be issued to Catlow as his property for a consideration, which the plaintiff claims was injurious to the corporation. As the plaintiff claims that the consideration, although unlawful, was sufficient to give a *434 title which he maintains, he must abide by it as a fact, and, therefore, in all its consequences. It is not competent for him to take part and reject part, as it was one transaction. Counsel for the defendant in a later case before the general term cited, on this point, Hooker v. London Railway Co. (7 Ins. 368); the opinions in Williams v. Western Union Tel. Co. (48 Super. Ct. [J. & R.] 353); Mechanics’ Bank v. N.Y. & New Haven R. R. Co. (13 N. Y. 599, 600); Hughes v. Vermont Copper Co. (72 N. Y 207). .
The claim that the corporation had a right to recover the amount of profits made by the trustees for themselves, individually, in a transaction which they were conducting for the corporation, has not yet been noticed. What has been already said is to be applied to this claim. There is no doubt of this general rule, that trustees are liable to respond to those for whom they act for any profits made by them individually, but this is limited by the proposition, in the language of the court of appeals (Moody v. Smith, 70 N. Y. 598, 600): “A principal may give an agent express power to act in the business of the principal, so that the agent may reap a benefit, and in such case the principal is bound by the acts of their agent.”
It has been already considered that the shareholders were the real parties interested, and that their consent would bind the corporation, and it follows that the corporation could not recover from the trustees what shareholders liad arranged they should individually receive.
This opinion has had in regard solely the right of a member of a corporation to require that corporation to assert for his benefit, a claim for damages in which he may share, when in reality he stands in the shoes of one who took part in the transaction complained of. His want of light to maintain such an action does not affect any claim he may have for individual damage *435 from misrepresentation by the corporation or third parties, nor does it affect the claim of creditors or the liability of the corporation or its trustees to an action by the attorney-general.
Judgment affirmed, with costs.