### THE LYCEUM v. ELLIS et al.

*(Superior Court of New York City, General Term. March 4, 1890.)*

1. CORPORATIONS—POWER TO EXECUTE MORTGAGES—ASSENT OF STOCKHOLDERS.

Laws N. Y. 1864, c. 517, § 2, as amended by Laws 1871, c. 481, § 2, and Laws 1878, c. 163, § 1, providing that any corporation formed under the general manufactur-

ing act of 1848 may mortgage its property, provided that the written assent of a majority of the stockholders owning at least two-thirds of the capital stock shall be filed in the office of the county clerk, confers the power of assent on those representing two-thirds of the stock actually issued.

2. SAME—UNPAID STOCK.

It is not a valid objection to the validity of the mortgage that some of the shares represented in the assent had not been paid for in full. INGRAHAM, J., dissenting.

3. SAME—TRANSACTIONS WITH TRUSTEES—RATIFICATION.

The fact that the mortgage was given to secure bonds issued to the trustees of the corporation, for which they only paid 75 cents on the dollar, does not render the transaction itself void, or incapable of ratification by the stockholders, for the whole amount due thereon.

Appeal from special term.

The Lyceum, plaintiff, a corporation organized under the general manufacturing, etc., company act of February 17, 1848, issued bonds secured by a mortgage on its property, for the purpose of paying its indebtedness; but, being unable to dispose of a portion of said bonds, it was resolved by the board of trustees that each stockholder thereof should be given the option of taking a ratable proportion of such bonds at 25 per cent. discount from their par value. None of the stockholders, except defendants John S. Ellis, Jarvis C. Howard, Andrew G. Myers, and John Hyslop availed themselves of this option. Defendants Ellis, Myers, and Hyslop were trustees of the corporation at the time. The action is brought to have the said bonds declared to be invalid, or valid only for the amount of 75 per cent. of their face, and to restrain a foreclosure of the mortgage. From a judgment dismissing its complaint plaintiff appeals. Laws N. Y. 1864, c. 517, § 2, as amended by Laws 1871, c. 481, § 2, and Laws 1878, c. 163, § 1, provide that any corporation formed under the act of 1848 may mortgage its property, real or personal, or its franchises to secure the payment of any debts contracted in its business, provided that the written assent of a majority of the stockholders shall be filed in the office of the county clerk.

Argued before SEDGWICK, C. J., and FREEDMAN and INGRAHAM, JJ.

*J. H. Bird*, for appellant.    *H. Hendrickson*, for respondents.

SEDGWICK, C. J.    The plaintiffs are a corporation formed under the act of of the state for the formation of manufacturing and other kinds of corporations. They contest in this action the validity of a mortgage upon the real estate of the corporation, made to secure the payment of bonds, of some of which the defendants are the holders. The ground taken to impeach the validity is that "the written assent of the stockholders owning at least two-thirds of the capital stock" of the corporation was not given. There was a written assent. The plaintiff's claim as to this is that 80 shares, represented in the assent, had never been lawfully issued, and that the remaining shares represented were not two-thirds of the capital. The learned judge below, in effect, found that, if the 80 shares were excluded, there were still represented in the assent two-thirds of the capital stock. In this he was correct, under the case of *Sugar Co.* v. *Whitin*, 69 N. Y. 339. That case decided that, "for the purposes of this act, * * * the amount actually issued and owned should be regarded as the amount of the capital stock. The design was to confer this power of assent upon those who represented two-thirds of the actual stock. They represented two-thirds of the pecuniary interest and property of the corporation." The learned counsel for the plaintiff argues that the case cited makes a limitation of the general principle announced, by saying, in reference to what it held to be the amount of the capital stock, or the 2,000 shares, "and, for aught that appears, no more was intended to be issued." The meaning of this I take to be that an assent to a mortgage made by two-thirds of the then actual capital stock will not be sufficient, if also then there is a definite intention of increasing the actual stock, by future issuing of shares in a manner that will increase the actual stock. The in-

tention referred to is not a general intention that is presumed as to all shares not transferred. It would be an attempt to evade the statute, that a mortgage should be made upon the assent of two-thirds of the actual capital, when that was accompanied by the beginning of an arrangement to increase the capital, or even by an intention forthwith to make such an arrangement. That method would be fraudulent as to those who might afterwards become the owners of shares. In the present case, the fact is that, if there were an intention to issue the shares, 120 in number, of which the 80 was represented in the assent, the result would be that those 120 shares must be considered part of the actual capital, and then the persons to whom the issue was made would be considered the owners of the shares. In such case, there was an assent of two-thirds of the capital stock, upon the position taken by the plaintiff.

There was further objection taken on the ground that 40 shares represented in the assent had not been paid for in full, but had been paid for only to the extent of the nominal value of 12 shares. It is held in *Wheeler* v. *Millar*, 90 N. Y. 359, that neither the issuing of a certificate for shares, nor payment for the shares, is indispensable to a subscriber being an owner of shares in capital stock. "Whatever may be said of a case where no fact is present, as the foundation of an inference that title has passed, except the bare fact of a subscription, it is entirely reasonable that where, in addition, the corporation has explicitly recognized the alleged stockholder as such, and the latter has acted in that capacity, such facts should be deemed sufficient to justify a conclusion of ownership, and make the subscriber a stockholder." In the present case, the facts justified the inference made by the judge below, that the persons who claimed in the assent to be the owners of the 40 shares were in fact stockholders and owners of capital stock to that amount. It is not necessary to determine that the 120 shares were or were not legally issued. They were issued to the other stockholders without any consideration received by the corporation. Whether they were legally issued or not, the result in this case would be the same. The findings show that the judge below acted upon this view.

The plaintiff further complains of the issuing of bonds of the company to the defendants, or some of them, upon the consideration of the payment to the company of 75 per cent. of the face of the bonds. The transaction, in itself, is not invalid. If the obligation were given by a natural person, there might be a valid objection that they were void for usury. A corporation cannot avoid its obligation for such a reason. Assuming, however, that such of the defendants as were trustees of the company when they took the bond from the company held such a relation to the company, the company could avoid the transaction, that right to avoid was an equitable right. The transaction was not void, and might be ratified. And if the stockholders ratified expressly or by acquiescence, after knowledge for a sufficient time, the plaintiffs cannot avoid. The finding below, that there was such a ratification or acquiescence by all the stockholders, was supported by direct and circumstantial evidence. The case does not disclose any errors, and the judgment should be affirmed, with costs.

FREEDMAN, J., concurs.

INGRAHAM, J., (*dissenting*.) I am unable to concur with my associates. The plaintiff was authorized by statute to execute a mortgage upon its property to secure existing debts. It has been held that when a bond of a corporation is issued it is a debt, and that a mortgage to secure such a bond is valid; but the bond, as between the obligor and obligee, where such obligee is one of the trustees of the corporation, is only an obligation for the amount paid thereon. When, therefore, the corporation issued to its trustees bonds for

which they paid 75 cents on the dollar, the obligee could only have recovered from the plaintiffs the amount that he had advanced to the company, and the bond was a valid debt of the company to that extent only. The mortgage was valid to secure the payment of the valid debt, but was not valid to secure whatever was a debt of the company. I do not think that the evidence justified the court in finding that all the stockholders ratified the acts of the trustees in giving to themselves obligations of the company at 75 cents on the dollar. There was no formal act of ratification. At most, it was a failure of the stockholders to take the bonds at that price when offered to them, and subsequently, after the transaction was completed, a failure to take proceedings in disaffirmance thereof. But the corporation was under the control of the same trustees who had authorized the issue of the bonds, and it does not appear that it was able to repay to the trustees to whom the bonds had been issued the amount that they had actually paid to the corporation. I think the stockholders had a right to wait until the obligations became due or the obligees attempted to enforce the obligation, and then tender the amount actually due. The delay of the stockholders has not changed the position of the parties, and there is nothing to show that either the corporation or its stockholders are estopped from asserting that the corporation is only liable to repay what it had actually received. It is clear that Ellis purchased the bonds for himself, paid for them with his own money, and took them in the name of Julia E. Ellis. It is not necessary to determine whether there can be any relief as against these bonds issued to Ellis in this action without making Julia E. Ellis a party. I think that plaintiff was entitled to a judgment declaring that the bonds issued to its trustees, and now held by them, are valid only to the extent of 75 per cent., and allowing it to discharge such obligation on a payment of that amount and interest. I think, therefore, the judgment should be reversed, and a new trial ordered.