ATLANTIC TRUST COMPANY, Trustee, Respondent, *v.* THE CRYSTAL WATER COMPANY OF EDGEWATER, Appellant, Impleaded with THE MERCANTILE TRUST COMPANY, Trustee, Defendant.

*Negotiable bonds secured by a trust mortgage are to be regarded as notes — presumption as to consideration — burden of proof in the case of the original bondholders and of their transferees — assent of the stockholders to a mortgage — right of denial thereof by the corporation — option on default in interest to declare the principal due.*

Where a corporation issues a series of negotiable bonds secured by a trust mortgage, the holders of such bonds must, in an action brought to foreclose the mortgage, be regarded as if they were holders of negotiable promissory notes.

As between the original bondholders and the corporation, the possession of the bonds is sufficient to raise the presumption that the holders have acquired them *bona fide* for full value and in due course, and if the corporation relies upon the defense that the original bondholders paid no consideration therefor it must introduce evidence rebutting the presumption.

Where the trustee named in the mortgage is not a mere depositary of the bonds, but is a trustee for the bondholders, it may maintain an action to foreclose the mortgage. In such an action, when the trustee proves the issue of bonds and shows that it is the holder thereof, it is entitled to the presumption which would have obtained had the action been brought by the bondholders themselves.

The trustee, if it wishes to avail itself of the superior equities which subsequent transferees of the bonds would have, must show that its *cestuis que trustent* are not the original bondholders. In the absence of such proof, the corporation is entitled to show that there was no consideration for the execution of the bonds.

In determining whether a sufficient number of stockholders of the corporation assented to the execution of the mortgage as required by the statute, the amount of the stock actually issued and owned should be regarded as the amount of the capital stock.

The corporation is estopped from attacking the validity of the mortgage on the ground that the necessary consents of the stockholders were not obtained, as long as it retains any property acquired under the mortgage.

*Quære*, whether such defense would be available to the corporation under any circumstances.

A provision in the mortgage that, in the event of a default continuing for ninety days in the payment of the interest due upon the bonds, the principal of the bonds shall, at the option of the holders of such bonds, become due and payable, does not require the exercise of the option by all of the bondholders; it is sufficient that the holders of a large majority of the bonds have elected to exercise the option.

*Quære*, whether the option is one to be exercised by the trustee of the mortgage and not by the bondholders.

APPEAL by the defendant, The Crystal Water Company of Edgewater, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Richmond on the 4th day of December, 1901, upon the decision of the court rendered after a trial at the Richmond Special Term.

*Howard Taylor*, for the appellant.

*William N. Cohen* [*Bainbridge Colby* with him on the brief], for the respondent.

JENKS, J. :

This is an action brought by the trustee to foreclose a mortgage made by the defendant corporation, The Crystal Water Company of Edgewater, to secure bonds for $750,000, payable to trustee or bearer on July 1, 1910. The defendant's answer is (1) that the bonds were given for no consideration or for such an inadequate consideration as amounted to bad faith ; (2) that they were *ultra vires* the corporation ; (3) that the mortgage lacked the statutory assent of the stockholders, and (4) that the principal of the mortgage had never become due. I consider the defenses in their order.

1. The learned counsel for the appellant stated on the argument that the first question involves the burden of proof. The last analysis may be so described. The bonds were negotiable instruments (*McClelland* v. *Norfolk Southern R. R. Co.*, 110 N. Y. 469, 475, 476), and the holder thereof is regarded as is the holder of a bill or note of the same character. (Daniel Neg. Inst. [4th ed.] § 1502.) Upon the foreclosure of such a mortgage, as against *bona fide* purchasers for value, only the same defenses are permitted as might be raised in an action in a court of law upon the bonds, and the bondholders " stand in the same position as *bona fide* assignees for value and before maturity of negotiable promissory notes." (Jones Corp. Bonds & Mort. § 414, citing *Kenicott* v. *Supervisors*, 16 Wall. 452; *Carpenter* v. *Longan*, Id. 271.) If an action had been brought by the original bondholders, then as between them and the defendant, the possession of the bonds was sufficient to raise the presumption that attaches to the possession of a negotiable instrument, that the holder had acquired them *bona fide*, for full value, and in due course. (*Kneeland* v. *Lawrence*, 140 U. S. 209 ; *Hotel Co.* v. *Wade*,

97 id. 13, 24; *Collins* v. *Gilbert*, 94 id. 753; *Newcombe* v. *Fox*, 1 App. Div. 389; affd., 154 N. Y. 754.) The fact that the instrument is negotiable raised a presumption which stands in lieu of proof, and it then was incumbent upon the defendant to give evidence that there was no consideration paid by the original transferee of the bonds; that is, it must meet the presumption by evidence as if the plaintiff had proven that he had paid consideration. In *Durland* v. *Durland* (153 N. Y. 67), the court, per MARTIN, J., say: " Moreover, that the paper, which is the basis of this claim, is a promissory note and must be treated as such, there can be no doubt. A good consideration is not only stated on the face of the note, but the presumption is that it is a valid obligation, based upon a good and legal consideration, and the burden of showing that there was a want of consideration rested upon the defendant. The appellant, while admitting this presumption, contends that because the respondent introduced evidence to show an actual consideration, therefore she cannot avail herself of the presumption which the law affords. With this contention we do not agree. We think it cannot be properly held that the plaintiff, by giving evidence showing an actual consideration, thereby waived the right to avail herself of the presumption which the law affords or that it relieved the defendant from the burden of proving his defense." But the learned and able counsel for the appellant says that the plaintiff is a mere depositary so that in no part of the trial were the rights of any persons proven whereon could be founded a claim. If the plaintiff were a mere depositary, there is authority that it could not maintain this action. (Daniel Neg. Inst. [4th ed.] § 1181a; *Sherwood* v. *Roys*, 14 Pick. 172.) I think that the learned counsel is more accurate when he states, further on in his brief, that the plaintiff is a trustee for the bondholders. The bondholders are the beneficiaries of the mortgage and that instrument " contains, in effect, a contract made for their benefit through a trustee as a convenient intermediary." The rights vested in the trustee were for the benefit of the bondholders, who are the real parties in interest. (*O'Beirne* v. *Allegheny & Kinzua R. R. Co.*, 151 N. Y. 372, 384; *Ettlinger* v. *P. R. & C. Co.*, 142 id. 189, 193; *Shaw* v. *Railroad Co.*, 100 U. S. 605; *Hackensack Water Co.* v. *De Kay*, 36 N. J. Eq. 548; Jones Corp. Bonds & Mort. § 294; Cook Corp. § 821; Taylor

Priv. Corp. [4th ed.] § 814.)   The trustee is the proper party to maintain the present action.   (Jones Corp. Bonds & Mort. § 386, and authorities cited ; Taylor Priv. Corp. [4th ed.] § 814.)   I think, then, that when this plaintiff proved the issue of the bonds and showed that it was the holder thereof, it was entitled to the presumption that would have obtained if the action had been brought by the *cestuis que trustent* themselves.

We now reach a grievance of the appellant, which seems to be that it was compelled to prove a negative.   The fact that an allegation is negative in terms does not relieve one from proof thereof perforce of the rule that he has not to prove a negative.   (1 Greenl. Ev. [15th ed.] § 74 *et seq.*)   Inasmuch as the action is brought by a trustee for many bondholders, whose names do not appear, the question arises whether the defendant was entitled to treat the trustee as an original bondholder, against whom proof of no consideration would be admissible, and proceed to offer such proof without first showing that the *cestuis que trustent* were the original transferees, or whether in order to preclude the defendant from such proof the plaintiff must show that its *cestuis que trustent* were other than the original transferees.   I am inclined to the opinion that the burden was upon the plaintiff if it wished to avail itself of the superior right of a subsequent transferee to show that its *cestuis que trustent* were not the original transferees.   Daniel on Negotiable Instruments ([4th ed.] § 814a) says : " This, however, is to be observed : if the instrument be payable to bearer, and there be no indorsement upon it, there is nothing upon its face to indicate whether the holder is the original payee or a transferee by delivery.   If he is the original payee, proof of want or failure of consideration is a complete defense ; if a transferee, the defense of want or failure of consideration will not affect him unless he had notice.   When there is nothing in the case but the production of the paper payable to bearer on the one side, and proof of want or failure of consideration on the other, what presumption arises ?   Is it to be presumed that the holder is the original payee, or that he is a transferee ?   The general burden of proof is upon the plaintiff in all cases, and presumptions of fact are simply presumptions that certain facts have occurred as the natural and usual consequence of a fact proved.   The original payee and possessor of the paper cannot be presumed to have transferred it unless it be presumed that

owners of such instruments more generally part with their property than retain it.   This is too vague and uncertain a presumption to rely upon ; and if the holder be a transferee, and, therefore, entitled to recover notwithstanding want or failure of consideration, he should bear the burden of showing his superior position to exist." (See, too, *Bissell* v. *Morgan*, 11 Cush. 198.)   In the absence, then, of such proof, I think that the defendant was entitled to offer evidence of the want of consideration for the bonds.   It is true that in its answer the defendant alleges : " Such bondholders were originally either Edward W. Bond or the members of the firm of Woodbury, Moulton & Stearns.   The bondholders for whom this plaintiff is now trustee are the legal representatives or assignees of the aforesaid individual or firm."   Cross-examination of the witness Fulle elicited that there were some 270 different persons who brought bonds to his corporation, to whom certificates were issued ; and the direct examination of the witness Bond elicited that the bonds he represented belonged to the widow of Ephraim W. Bond, the estate of the wife of the witness, and others.   It may be that this was some evidence that some of the present holders were subsequent transferees, but nevertheless if the plaintiff desired to raise the shield, unavailable to those bondholders who were original payees, I think that it was incumbent upon it to make it clear that its *cestuis que trustent* were subsequent transferees.   The learned court, however, did not reject such evidence when offered by the defendant.   And I find no reversible error in the rulings of the court upon the various questions to elicit the evidence of no consideration.

Mr. Kolff, an expert, testified for the defendant that the value of the realty, simply as real estate to be sold for general purposes, exclusive of improvements, was $25,000, and with the improvements something in excess of $30,000, independent, however, of its character or use in connection with the business of supplying water. The plaintiff offered evidence which tended to prove that when $500,000 of the bonds were issued, the defendant passed a resolve for the making of an agreement with Stearns, which provided for the execution of an agreement between him and the defendant, whereby Stearns was to pay off the floating indebtedness of the Crystal Water Company, to cancel or to provide for the cancellation

of its bonds and its mortgages, to transfer its lands, privileges and water rights, and its water works, plant and fixtures and all of its capital stock in exchange for 9,992 shares of the capital stock of the defendant and $500,000 of the bonds. Mr. Stearns put the value of the property between $400,000 and $500,000. Another expert valued the plant so to be transferred at $500,000, and said that $100,000 was a fair value of the cost of putting down the pipes. As to $243,000 of the bonds, the defendant called two of the book-keepers of the defendant, one of whom testified that the defendant never received any of the money that he knew of in connection with the disposition of the $243,000, except as moneys may have come to them from Woodbury and Moulton. But on his cross-examination he said that he would not say that all moneys received from them were entered in the bills payable, but "so far as it went through my check book and account books it did." The money that was advanced by them was usually credited to bills payable. The court could have found, even from this testimony, that the company received $157,000 from Woodbury and Moulton, and it also appeared that the company had issued bonds for $15,000 in 1891 and $25,000 for extensions, and that the corporation had also acquired certain lands. Upon the consideration of this evidence I see no reason to disturb the decision and the judgment of the learned Special Term, that valuable consideration was paid by the original transferees, and that no fraud was made out by the defendant. (*Lowery* v. *Erskine*, 113 N. Y. 52, 55.)

It appears that the mortgage was assented to by all of the stockholders of record at the time it was made, and that Mr. Detrick, to whom a single share was thereafter delivered, as president, executed the mortgage as such official, signed the bonds and caused them to be sealed. The remaining stock was issued to Mr. Stearns, who received $500,000 of the bonds. Even if the consideration paid exceeded the value of the property received, or some of the bonds were given up at less than par for cash advanced, all of the stockholders were in effect consenting and participating parties thereto. (*Barr* v. *N. Y., L. E. & W. R. R. Co.*, 125 N. Y. 263, 273; *Seymour* v. *S. F. C. Assn.*, 144 id. 333; *Hotel Co.* v. *Wade, supra.*)

2. The appellant also contends that the bonds were invalid because they were issued in contravention of section 8 of the Water Works

Act (Laws of 1873, chap. 737), or section 42 of the Stock Corporation Law (Laws of 1890, chap. 564). The learned counsel quotes section 5 of chapter 737 of the Laws of 1873, and in connection therewith section 8 thereof, added by chapter 77 of the Laws of 1881. But section 5 was amended by chapter 213 of the Laws of 1881 and by chapter 321 of the Laws of 1881 and by chapter 422 of the Laws of 1885, whereby the corporation was permitted to borrow money for the construction of its works and to issue bonds and mortgage its property therefor. Moreover, the mortgage was made in July, 1890, while section 42 of the Stock Corporation Law did not go into effect until May 1, 1891.

3. As to the statutory assent. It is undisputed that the seven stockholders, or, in other words, all of the existing stockholders, assented on July third, while on July sixteenth the great bulk of the stock was originally issued to Stearns. The provision requiring the assent of the stockholders is for the benefit of the stockholders, and it is " at least doubtful" whether the corporation can raise this defense. (*Rochester Savings Bank* v. *Averell*, 96 N. Y. 467, 473; *Paulding* v. *Chrome Steel Co.*, 94 id. 334, 341; *Greenpoint Sugar Co.* v. *Whitin*, 69 id. 328.) And the latter case is also authority for the proposition that the amount actually issued and owned only should be regarded as the amount of the capital stock. Whether or not the actual stockholders had then paid for their stock is not material. When this mortgage was made, the law did not prohibit the issue of stock except in exchange for money, labor or property reasonably worth the par value of the stock. (Laws of 1873, chap. 737, § 2, referring to Laws of 1848, chap. 40, and § 6 of the latter statute. See, too, *Wheeler* v. *Millar*, 90 N. Y. 353.) The significance of the quotation made by the learned counsel for the appellant from *The Lyceum* v. *Ellis* (8 N. Y. Supp. 867) is that such assent might be fraudulent as to the subsequent owner of the shares who, in this case, was Mr. Stearns. But Mr. Stearns participated in the transaction, inasmuch as he received in the first instance the large majority of the bonds. Moreover, the defendant, so long as it holds the benefit of any property acquired under the mortgage, is, I think, estopped from raising the point within the authority of *Hamilton Trust Co.* v. *Clemes* (17 App. Div. 152, 157; affd., 163 N. Y. 423).

In *Seymour* v. *S. F. C. Assn.* (*supra*), FINCH, J., said : "There were some alleged technical irregularities in the issue of the bonds. These represented the purchase price of the land which the corporation bought and kept, and were its promise to pay, which it could not justly repudiate. That kind of plunder which holds on to the property but pleads the doctrine of *ultra vires* against the obligation to pay for it has no recognition or support in the law of this State. ( *Whitney Arms Co.* v. *Barlow,* 63 N. Y. 62; *Duncomb* v. *N. Y., H. & N. R. R. Co.,* 84 id. 199 ; *Woodruff* v. *Erie R. Co.,* 93 id. 619.)"

4. The 13th allegation of the complaint is : "More than ninety days have expired since the default and demand as aforesaid, and the option under the provisions of said mortgage to declare the principal of all the outstanding bonds secured by said mortgage due and payable, has been duly exercised, and said principal of the outstanding bonds secured by said mortgage is now due and payable." It is to be noted that the exercise of any option *by the bondholders* is not pleaded. On the motion made to dismiss at the close of the case, the learned court held that this referred to the exercise of the option vested in the trustee and not that vested in the bondholders. If this construction be right, then the beginning of the suit was sufficient evidence thereof. But in view of the other possible constructions of the allegation, the plaintiff thereafter sufficiently proved the exercise of the option by the bondholders as provided for in the 5th paragraph of the said mortgage by evidence of the presentation of the coupons for payment, representing over $250,000, of the request of the bondholders of more than $300,000 upon the plaintiff because of continued default to exercise their right and to have foreclosure proceedings instituted, of the request of the chairman of the bondholders' committee, representing more than $731,000 of the bonds to the attorneys of the plaintiff to proceed to foreclose, and also of the request made on behalf of the bondholders' committee to make demand for the principal and interest. In *Farmers' L. & T. Co.* v. *N. Y. & N. R. Co.* (150 N. Y. 410), cited by the learned counsel for the appellant, the plaintiff alleged the receipt of a written request *by the bondholders,* and the provision of the mortgage called for by the written request of holders of $2,000,000 in amount of said bonds. The provision in the present

mortgage is that in the event that the party of the first part shall fail for the space of ninety days to pay the semi-annual interest as agreed, when the same shall become due on any of said bonds, after the presentation and demand for the payment of the said coupons, then, or in either of such events, the whole of the principal of all of the outstanding bonds hereby secured shall, at the option of the holders of such bonds, become due and be payable, and the lien hereby created may be enforced for the whole debt, etc. This is not to be construed that the option must be exercised by all of the bondholders, for in that event the dissent of a single bondholder if obtained by the defaulting defendant might preclude or bar procedure, or there might arise any number of foreclosure suits upon the same mortgage.

The judgment and order should be affirmed, with costs.

All concurred.

Judgment affirmed, with costs.