## COLLINS *v.* GILBERT.

1. A negotiable instrument, payable to bearer, or indorsed in blank, produced by a transferee suing to recover its contents, is, when received in evidence, clothed with the *prima facie* presumption that he became the holder of it for value at its date in the usual course of business, without notice of any thing to impeach his title.

2. The title of a *bona fide* holder for value of an accepted draft, indorsed in blank, is not affected by the fact that the party from whom he received it before its maturity had possession of it for certain purposes, and misappropriated it.

ERROR to the Circuit Court of the United States for the Western District of Pennsylvania.

This suit was brought by Gilbert & Gay against Thomas Collins upon his acceptance of a certain draft for $8,000, drawn by P. F. Collins & Co., to their own order, and by them indorsed in blank.

The firm of P. F. Collins & Co. consisted of P. F. Collins and John M. Moorhead, who were, as sub-contractors, engaged in grading seven miles of the Connecticut Western Railroad, then in process of construction. The contractor with the railroad company was one Barnes, who was to pay them monthly for work done, less fifteen per cent, retained to secure the proper completion of their contract with him; but they were unable to proceed with the work unless he advanced the retained percentage. He agreed to do so, if they would give him as security for their execution of the contract, to be held by him for that purpose, an acceptance of Thomas Collins to the amount of $8,000.

The draft accepted by him was accordingly given to Barnes, for whom it was discounted by the plaintiffs. The jury found for the plaintiffs; and judgment having been rendered upon the verdict, the case was brought here.

The errors assigned are grounded upon the exclusion by the court below of certain evidence offered by Collins, a statement of which is given in the opinion of the court.

Argued by *Mr. Richard T. Merrick* for the plaintiff in error, and by *Mr. Hill Burgwin* for the defendants in error.

MR. JUSTICE CLIFFORD delivered the opinion of the court.

Transferees of a negotiable instrument, such as a bill of exchange or promissory note payable subsequent to its date, hold the instrument clothed with the presumption that it was negotiated for value in the usual course of business at the time of its execution, and without notice of any equities between the prior parties to the instrument.

Instruments of the kind are commercial paper in the strictest sense, and must ever be regarded as favored instruments as well on account of their negotiable quality as their universal convenience in mercantile affairs. They may be transferred by indorsement, or, when indorsed in blank or made payable to bearer, they are transferable by mere delivery. *Goodman* v. *Harvey*, 4 Ad. & E. 870; *Goodman* v. *Simonds*, 20 How. 365; *Wheeler* v. *Guild*, 20 Pick. (Mass.) 551; *Noxon* v. *De Wolf*, 10 Gray (Mass.), 346; *Mager* v. *Badger*, 34 N. Y. 249.

Possession of such an instrument payable to bearer, or indorsed in blank, is *prima facie* evidence that the holder is the proper owner and lawful possessor of the same; and nothing short of fraud, not even gross negligence, if unattended with *mala fides*, is sufficient to overcome the effect of that evidence, or to invalidate the title of the holder supported by that presumption. Story on Bills (4th ed.), sect. 416; Byles on Bills (10th ed.), 119; Chitty on Bills (12th ed.), 257; *Mills* v. *Barber*, 1 Mee. & W. 425; *Murray* v. *Lardner*, 2 Wall. 110; *Bank of Pittsburgh* v. *Neal et al.*, 22 How. 96.

Apply that rule in a suit in the name of the transferee against the maker, and it is clear that he has nothing to do in the opening of his case except to prove the signatures to the instrument, and introduce the same in evidence, as the instrument goes to the jury clothed with the presumption that the plaintiff became the holder of the same for value at its date, in the usual course of business, without notice of any thing to impeach his title. *Bank* v. *Leighton*, Law Rep. 2 Exch. 61; *Pettee* v. *Prout*, 3 Gray (Mass.), 503; *Way* v. *Richardson*, 3 id. 413.

Clothed as the instrument is with those presumptions, the plaintiff is not bound to introduce any evidence to show that he gave value for the same until the other party has clearly proved that the consideration of the instrument was illegal, or that it

was fraudulent in its inception, or that it had been lost or stolen before it came to the possession of the holder. *Uther* v. *Rich*, 10 Ad. & E. 784; *Bailey* v. *Bidwell*, 13 Mee. & W. 73; *Arbouin* v. *Anderson*, 1 Ad. & E. N. S. 504; *Bank* v. *Fagan*, 7 Moore, P. C. 76; *Fitch* v. *Jones*, 5 El. & Bl. 238; *Smith* v. *Braine*, 16 Ad. & E. N. S. 251; *Hall* v. *Featherstone*, 3 Hurls. & Nor. 286.

Sufficient appears to show that the drawers of the draft described in the declaration were sub-contractors to grade seven miles of a railroad referred to in the affidavit of defence, and that they were to be paid monthly for work done, subject to a certain deduction to be retained as a security for the completion of their contract. Moneys received from the monthly payments being insufficient for the purpose, they were unable to complete their undertaking without an advance from the principal contractor. What they wanted was an advance of $8,000; and it appears that the contractor was willing to make it, if they would give him the acceptance of the defendant in the same amount, as a security that they would perform their contract. Pursuant to that arrangement, they drew their draft upon the defendant in that amount, payable to the order of their senior partner; and the record shows that the draft was accepted by the defendant, and was duly indorsed by the payee.

Beyond doubt, the draft was duly executed and delivered to the contractor as security for the performance of the contract of the drawers of the instrument. By its terms it was payable in ninety days from date; and it must be assumed, in the absence of proof to the contrary, that the plaintiffs became the holders of the same before maturity.

Payment being refused, the plaintiffs instituted the present suit to recover the amount. Process was served, and the defendant appeared and pleaded that he never accepted the draft, and that he never promised in manner and form as alleged in the declaration. Subsequently the parties went to trial, and the verdict and judgment were for the plaintiffs. Exceptions were filed by the defendant, and he sued out the present writ of error.

Six offers of proof were made by the defendant in the course of the trial, all of which were excluded by the court, subject to

the exception of the defendant.. Four of the rulings of the court in that regard are now assigned for error, and they present the only matters of controversy exhibited in the record. Rulings of the kind, not assigned for error, may be dismissed without remark; nor would the other two exceptions have required much examination, even if they had been assigned for error, as they involve substantially the same questions as those presented by the other rulings of the court.

1. Testimony having been introduced by the defendant that one of the plaintiffs was informed, before the draft came into their hands, that the contractor had agreed to advance money to enable the sub-contractors to pay their employés, they, the sub-contractors, giving the defendant an acceptance as security in lieu of retained percentage, the defendant proposed to ask the witness what was the arrangement between the sub-contractors and the contractor; by virtue of which the defendant's acceptance was obtained; to which the plaintiffs objected, and the court excluded the question.

2. Evidence having been given by the same witness that there was an arrangement between the sub-contractors and the contractor, to the effect that the latter would advance money to the former to pay their men, upon their giving to the contractor the defendant's acceptance, to be retained by him in lieu of the stipulated percentage, the defendant proposed to show by the same witness that the work was finished by the defendant, and that by the terms of the contract all of the percentage retained became due and payable when the contract was completed; which offer of proof was objected to by the plaintiffs, and was ruled out by the court.

3. Complete execution of the draft is not denied; but the theory of the defendant is, that the contractor took the same of the sub-contractors in lieu of retained percentage; and he proposed to show that the sub-contractors subsequently abandoned their contract, and that the defendant, at the suggestion of the contractor, finished the same, he agreeing that if the defendant would complete the work, he, the contractor, would return the acceptance; and that the defendant never got either the percentage or the acceptance: to which the plaintiffs objected, and the court excluded the testimony.

4. Finally, the defendant proposed to show that the contractor, when the acceptance was delivered to him, was indebted to the sub-contractors for retained percentage in excess of the amount of the acceptance; which was also objected to by the plaintiffs, and was excluded by the court.

Properly analyzed and construed, it is quite obvious that these several offers of proof present but a single question, and that they serve to illustrate very fully the different theories of law maintained by the respective parties in respect to such commercial instruments. Throughout the trial the plaintiffs contended that they were the *bona fide* holders for value of the acceptance, having received the same before maturity in the usual course of business, and that they held a good title to the instrument, unless the defendant could show that they had notice of such facts as were sufficient to impeach the title between the antecedent parties, or that the consideration of the instrument was illegal, or that it was fraudulent in its inception, or that it had been lost or stolen before it came to their possession. *Swift* v. *Tyson*, 16 Pet. 15.

Due delivery of the executed draft to the contractor indorsed in blank is admitted; but the theory of the defendant is that the contractor received it merely as security that the sub-contractors would perform their contract, and that the contractor caused it to be discounted without authority. Neither illegality of consideration nor fraud in the inception of the instrument is charged or pretended; nor is it alleged that the acceptance had been lost or stolen before the plaintiffs received it for discount. Instead of that, the theory of the defendant assumes that the contractor became the lawful holder of the acceptance indorsed in blank for the specified purpose, which is an implied admission that the acceptance was one of a class of commercial instruments which may be transferred by delivery.

Suppose that is so, still it is insisted by the defendant that evidence is admissible in such a case to show that the first holder under such circumstances appropriated the acceptance to a use other than that for which it was delivered to him, and that proof of such a misappropriation is sufficient to impeach the title of a subsequent holder for value, even though it came into his possession before maturity in the usual course of business.

Where the supposed defect or infirmity in the title of the instrument appears on its face at the time of the transfer, the question, whether the party who took it had notice or not, is, in general, a question of construction, and must be determined by the court as matter of law. *Andrews* v. *Pond*, 13 Pet. 65; *Fowler* v. *Brantly*, 14 id. 318; *Brown* v. *Davis*, 3 T. R. 86.

But it is a very different matter when it is proposed to impeach the title of a holder for value by proof of any facts and circumstances outside of the instrument itself. He is then to be affected, if at all, by what has occurred between other parties, and he may well claim exemption from any consequences flowing from their acts, unless it be first shown that he had knowledge of such facts and circumstances at the time the transfer was made. Nothing less than proof of that character can meet the exigencies of such a defence, if it be true that a party who acquires commercial paper for value in the usual course of business may, if it was acquired before maturity and without notice of any defect in the title, hold it free of all equities between the antecedent parties to the instrument.

Indorsees of negotiable bills of exchange and promissory notes enjoyed the benefit of that rule for ages before any attempt was made to annex any qualification to it, unless it appeared that the consideration was illegal, or that the instrument was fraudulent in its inception, or that it had been lost or stolen before it came to the possession of the holder. *Hinton's Case*, 2 Show. 247; *Anonymous*, 1 Salk. 126; *Miller* v. *Race*, 1 Burr. 462; *Grant* v. *Vaughan*, 3 id. 1516; *Peacock* v. *Rhodes*, 2 Doug. 633; *Lawson* v. *Weston*, 4 Esp. 56.

Attempt was subsequently made to qualify that right of a *bona fide* holder, and to establish the rule, that if the indorser of the instrument had no valid title to the same, and that such facts and circumstances were known to the indorsee at the time of the transfer as would have caused a person of ordinary prudence to suspect that the indorser had no right to transfer the instrument or to use the same for his own benefit, then the holder, as against the acceptor or maker, is not entitled to recover. *Gill* v. *Cubitt*, 3 B. & C. 466.

Though the modified rule was never satisfactory, yet it must be admitted that it was followed for a time in many jurisdic-

tions. But it is unnecessary to discuss that topic, as the case referred to has been distinctly overruled in the tribunal where it was decided, and has not been considered an authority there for more than forty years. *Goodman* v. *Harvey*, 4 Ad. & E. 870.

Abundant authority for that proposition is found in the cases already cited, and Mr. Chitty says that the old rule of law, that the holder of bills of exchange, indorsed in blank and transferable by delivery, can give a title which he does not pos sess to a person taking the same *bona fide* for value, is again re-established in its fullest extent. Chitty on Bills (12th ed.), 257.

Speaking upon that subject, the Supreme Court of Massachusetts said that it was once held that the holder of a bill of exchange or promissory note fraudulently put in circulation must show that he had used due and reasonable caution in taking it; but the court proceeds to say that it has since been definitively adjudged that if he took the instrument in good faith he is entitled to recover on it, and that even gross negligence is not tantamount to fraud, though it may be given in evidence as tending to prove that charge, that the burden of proving good faith is all the burden which the law imposes on such a holder. *Worcester Bank* v. *Dorchester Bank*, 10 Cush. (Mass.) 491.

Conclusive support to that conclusion is found in the authorities which the court cite for that purpose, among which are the following: *Goodman* v. *Harvey*, 4 Ad. & E. 870; *Arbouin* v. *Anderson*, 1 Ad. & E. N. S. 504. We must hold, said Lord Denman, in the case last cited, that the owner of a bill of exchange is entitled to recover upon it if he has come by it honestly, and that that fact is implied *prima facie* by possession; that, to meet the inference so raised, fraud, felony, or some such matter, must be proved. *Smith* v. *Sac County*, 11 Wall. 146.

Instruments of the kind are intended for circulation, and Shaw, Ch. J., says that the law is so framed to give confidence and security to those who receive them, for valuable consideration, in the ordinary course of business, when payable to bearer or indorsed in blank, so as to be transferable by delivery; and he adds that, in general, a party taking such an instrument

under such circumstances has only to look to the credit of the parties to it, and the regularity and genuineness of the signatures and indorsements. So that if such a bill or note be made without consideration, or be lost or stolen and afterwards be negotiated for a valuable consideration, in the usual course of business, to one who has no knowledge of those facts, his title is good, and he shall be entitled to receive the amount. *Wheeler* v. *Guild*, 20 Pick. (Mass.) 350.

Title and possession in such a case are, in general, considered one and inseparable, and it will be presumed that a party thus in possession of such an instrument holds it for value until the contrary appears, and the burden of proof is on the party impeaching his title. *Collins* v. *Martin*, 1 B. & P. 648; *Bank* v. *Hoge*, 35 N. Y. 68; *Phelan* v. *Moss*, 67 Penn. St. 63; *Raphael* v. *Bank*, 17 C. B. 171.

In order to defeat the rights of a *bona fide* holder for value of a promissory note, which it is claimed was procured by fraud, it must be shown, either directly or by circumstances, that he had notice of such infirmity.

Proof of such facts and circumstances as would have put a reasonable man upon inquiry in relation thereto are not sufficient to constitute a defence to a suit by the holder. *Lake* v. *Reed*, 29 Iowa, 359; *Gage* v. *Sharp*, 24 id. 15.

Adjudged cases to support those propositions are very numerous, and it is equally well settled that where a negotiable bill or note is given in evidence duly indorsed, the legal presumption is that such indorsement was made at the date of the instrument, or at least antecedently to its becoming due; and the rule is, that if the defendant would avail himself of any defence not open to him, unless the bill or note was negotiated after it was dishonored, it is incumbent on him to show that the indorsement was in fact made after the instrument was overdue. *Ranger* v. *Cary*, 1 Met. (Mass.) 373; *Noxon* v. *De Wolf*, 10 Gray (Mass.), 347.

Actual possession of a negotiable instrument, payable to bearer or indorsed in blank, is plenary evidence of title in the holder " until other evidence is produced to control it; " but if to an action on the same " the defendant pleads that it was illegal in its inception, and that the plaintiff took it without

value, the illegality being proved, the *onus* is cast upon the plaintiff to prove that he gave value." *Smith* v. *Braine*, 16 Ad. & E. N. s. 250 ; *Bailey* v. *Bidwell*, 13 Mee. & W. 73.

Proof of gross negligence is not sufficient to overcome the *prima facie* presumption of title arising from possession ; but if it be alleged and proved that the instrument had its inception in illegality or fraud, a presumption arises from that proof that the plaintiff took it without value, or, in other words, it so far shifts the burden of proof, that, unless the plaintiff gives satisfactory evidence that he gave value for the same, the defence will prevail. *Fitch* v. *Jones*, 5 El. & Bl. 246 ; *Harvey* v. *Towers*, 6 Hurls. & Gord. 660.

Where there are circumstances, in the nature of fraud or illegality, which can properly be left to the jury, proof of those circumstances by the defendant will cast on the plaintiff the *onus* of showing that he gave value for the bill or note. *Hall* v. *Featherstone*, 3 id. 287 ; *Mills* v. *Barber*, 1 Mee. & W. 432.

Negotiable instruments are expressed to be for value, and, if payable to bearer or indorsed in blank, they pass by delivery from hand to hand, clothed with that presumption ; nor is that presumption overcome, where the suit is in the name of a subsequent holder, by proof that the indorsement was for the accommodation of the maker.

If it appears that the bill or note was obtained by fraud, or that it had been stolen before it came to the possession of the holder, then the presumption may arise that the holder did not pay full consideration for it, because in such a case it is probable that the person obtaining the instrument would pass it away for less than its full value. But where there is only the simple fact that it was an accommodation bill or note, then the inference is that the holder did give value for it, because that was the very object for which the instrument was given. *Percival* v. *Frampton*, 2 Cromp., M. & R. 183 ; *Seybel* v. *Bank*, 54 N. Y. 291.

Decided cases, almost without number, support that proposition ; but if the note or bill is founded in fraud, or was fraudulently obtained and put in circulation, the indorsee must prove that he paid value for it before he can recover the amount. *Tucker* v. *Morrill*, 1 Allen (Mass.), 528 ; *Maither* v. *Maidstone*,

1 C. B. N. S. 287; *Sistermans* v. *Field*, 9 Gray (Mass.), 337; *Brush* v. *Scribner*, 11 Conn. 390.

Tested by these several considerations, it is clear that there is no error in the record.          *Judgment affirmed.*