## HERLOW *v.* ORMAN.

January Term, 1885.

1. PRACTICE—ISSUE—NON-JOINDER OF—AFTER TRIAL.
    After having participated in a trial upon the merits, a party cannot be heard to object that there was no issue joined.

2. NEGOTIABLE INSTRUMENTS—EFFECT OF INDORSEMENT.
    An indorsement has as a legal effect the making of the note indorsed negotiable.

3. SAME—DELIVERY AFTER INDORSEMENT.
    After indorsement by the payee, simple delivery of the notes has the effect of transferring the notes and the money secured thereby to the person to whom they were delivered.

4. GARNISHEE—PLEAS IN SUIT BY HIS OWN CREDITOR.
    While a garnishee may plead judgment, he cannot plead in bar the pendency of garnishment proceedings against him in defense of a suit brought by his immediate creditor.

Error to the First judicial district court, Santa Fe county.

*Fiske & Warren,* for plaintiff in error.

*P. L. Van der Veer,* for defendant in error.

WILSON, J.  This was an action of *assumpsit,* in which the plaintiff below sought to recover the amount of two notes: one dated at Santa Fe, New Mexico, October, 1882, in which Paul F. Herlow, the defendant below, 90 days after the date thereof, for value received, promised to pay to the order of the Texas, Santa Fe & Northern Railroad Company $500, at the office of the Second National Bank of New Mexico, in Santa Fe, with interest at the rate of 12 per cent. per annum from date until paid.  The other note was for $350, payable four months after date, and in all other respects like the first note. Each note was indorsed by the Texas, Santa Fe & Northern Railroad Company.

The defendant below, by his counsel, pleaded the general issue, and two special pleas.  Upon the trial the court rendered judgment in favor of the plaintiff below for the amount of said notes and interest. The defendant below sued out his writ of error, and assigns as errors—

"(1) The court erred in refusing to allow him to plead his special plea, setting up his garnishment at the suit of said Hager.  (2) The court erred in trying said cause without an issue.  (3) The court erred in admitting improper and immaterial testimony in said case.  (4) The court erred in not granting a new trial for the causes, or some of them, in said motion made for that purpose, as shown by the record.  (5) That the court erred in not arresting the judgment in said case, for the reasons set forth in the motion for that purpose, as shown by the record."

Counsel for the appellant, in their paper book, further set forth:

"POINTS AND AUTHORITIES.

"(1) The declaration fails to state a cause of action, in that it does not show that the notes were indorsed to Orman, and hence no testimony could

properly be introduced in proof of that fact. (2) There was no proof that the said notes were indorsed or delivered before maturity. (3) No proper foundation was laid for the introduction of the notes sued on. (4) There can be no trial without an issue; and there was no issue made in this case, no replication having been filed to the special pleas."

I do not understand why the assignments of errors and points should not be alike. In this case, some are alike and others are not; but without determining how far we will in the future consider specifications of errors and points that are calculated to create confusion, rather than to elucidate, we will dispose of them as we find them. The fourth point and the second error assigned are in substance alike, the second error being, "The court erred in trying said cause without an issue." The fourth point is : "There can be no trial without an issue; and there was no issue made in this case, no replication having been filed to the special pleas." The case of *Waldez* v. *Archuleta*, 5 PAC. REP. 327,[1] decided at this January term, 1885, determines these against the appellant, and we here insert a quotation from the opinion in that case:

"In Pennsylvania, in a case heard and determined in the supreme court, the error assigned was that the defendant was forced to trial when the case was not at issue. The court say: 'The exception is without foundation, for it does not appear that the defendant objected to going to trial without a formal joinder of issue; as he took the chance of a verdict then, he shall not object now.' *Clement* v. *Hayden*, 4 Pa. St. 139. In another case in Pennsylvania, decided as early as 1827, the case had been tried in the court below without issue having been joined. The error assigned was that there had been no replication filed before the trial in the court below. The supreme court, in dismissing the case, say: 'We will not permit an exception like this to be argued. We have repeatedly declared that we will not listen to objections such as this, even though there should have been no issue at all. It would be a scandal to the administration of justice if we were longer to hear objections after a trial on the merits.' *Thompson* v. *Cross*, 16 Serg. & R. 349."

But in this case the error complained of is contradicted by the record itself, viz.:

"Now comes the said plaintiff, by his attorney, P. L. Van der Veer, Esq., and the said defendant comes by his attorney, Eugene A. Fiske, Esq., and issue having been joined between the said parties," etc.

The authorities and the record are against the fourth point, and second error assigned.

To pursue the points in their reverse order, it would seem that the third, second, and first points relate to the indorsement and delivery of the notes by the Texas, Santa Fe & Northern Railroad Company to James B. Orman, the plaintiff below, and may be considered together. The notes were indorsed by the payees, and no question was raised on the trial but that the indorsement was made by proper authority; as the notes were permitted to be given in evidence without requiring proof of the indorsements, no objection being made to the notes for want of proof of the indorsements by the payees. What

[1] Same case, *ante*, 195.

was the effect of those notes, being indorsed as they were, and delivered to Orman? The first legal effect was, the indorsement made the notes negotiable paper; and the second legal effect was that after the indorsement by the payees, simply delivering for value, the title to the notes and the amount of money called for on their face became transferred to the person to whom they were delivered.

Daniel on Negotiable Instruments, vol. 1, p. 1, says:

"An instrument is called negotiable when the legal title to the instrument itself, and to the whole amount of money expressed upon its face, may be transferred from one to another by indorsement and delivery by the holder, or by delivery only."

Again, on page 2, he says:

"But negotiable paper carries the right to the whole amount it secures on its face, and is subject to none of the defenses which might have been made between the original or intervening parties against any one who acquired it in the usual course of business before maturity. It is a circulating credit, like the currency of the country, and before maturity the genuineness and solvency of the parties are alone to be considered in determining its value."

Chief Justice GIBSON termed it a "courier without luggage."

Another legal consequence of the transfer and delivery of a negotiable note is that the law presumes them to have been transferred before they fell due, in good faith and without notice of any infirmity attaching to them. *Good* v. *Martin*, 95 U. S. 94; *Collins* v. *Gilbert*, 94 U. S. 753; 1 Daniel, Neg. Inst. 583, and cases cited in note.

The only further assignment of error requiring attention in this case is: "The court erred in refusing to allow him [the defendant below] to plead his special plea setting up his garnishment at the suit of said Hager." This may be a new question in this territory, but has been decided elsewhere repeatedly. The paper book in this case recites that the "plaintiff in error presented to the court the record of a cause therein pending, by which it appeared that, by order of the court, the said plaintiff in error had, *after the filing* of his said pleas, been directed by process of garnishment, properly issued, to hold and account for all moneys, debts," etc. This quotation shows that no judgment had been obtained in the attachment case; but while the garnishee may plead judgment, it has been held that he cannot plead in bar the pendency of garnishment proceedings against him in defense of a suit brought by his immediate creditor. *Shealy* v. *Toole*, 56 Ga. 210; Drake, Attachm. 702, note; *Spicer* v. *Spicer*, 23 Vt. 678; *McRee* v. *Brown*, 45 Tex. 508; *Hicks* v. *Gleason*, 20 Vt. 139.

In *Jones* v. *Wood*, 30 Vt. 271, POLAND, J., says:

"It will be seen upon slight reflection that to hold the mere pendency of a trustee (attachment) suit could be made to abate a subsequent suit by the principal debtor, and much more to hold that it could be pleaded in bar, would work the greatest injustice. It seems absolutely necessary, therefore, to hold that the principal debtor may sue notwithstanding the pendency of the trustee

(attachment) suit. But the court will be careful to see that the trustee is not subjected to any danger of being compelled to pay his debt twice."

In *Spicer* v. *Spicer*, 23 Vt. 678, the court ordered the execution to be stayed until the plaintiff should procure the defendant to be released from the trustee or attachment suit. In *Jones* v. *Wood*, 30 Vt. 271, before cited, Judge POLAND ordered stay of execution until the attachment was dissolved or satisfied.

The judgment of the court below is affirmed, and it is ordered that when the judgment is paid or collected by execution, the money, when paid or collected on execution, shall be paid into court, to abide the result of the attachment proceedings.

BELL, J. I concur.