CITY NAT. BANK *v.* HICKOX.

(*Supreme Court of New Mexico.* February 16, 1888.)

NEGOTIABLE INSTRUMENTS—PRESUMPTIONS IN FAVOR OF HOLDER—FRAUD.

In *assumpsit* by the indorsee of a promissory note, the evidence showed that defendant had given it, together with a set of diamonds, in payment for a lot; that he had bought the lot solely on the payee's representations as to value; that at first he insisted on further time to examine it, but yielded when the payee told him that if he did not take it then he would not get it at all; that he was a jeweler, and was induced by the expectation of a profit of several hundred dollars on the diamonds, and the payee's promise not to negotiate the note; that the payee's grantor, to whom he claimed to have paid $2,000 for the lot, but to whom in fact he had only paid $1,000, was easily accessible, and defendant could have ascertained the facts by inquiry. The evidence as to the actual value of the lot was conflicting, and varied from $1,000 to $2,300. *Held* insufficient as evidence of fraud in the inception of the note to rebut the presumption in plaintiff's favor, as holder, and put him to his proof that he had paid value for it.[1]

Error to district court, Santa Fe county.

*P. S. Vandeveer,* for plaintiff in error. *E. A. Fiske,* for defendant in error.

BRINKER, J. This was an action of *assumpsit* upon a negotiable promissory note, due 30 days after date, by the plaintiff, as indorsee for value before maturity, against the defendant as maker. The declaration alleged these facts, together with a demand of payment, and a refusal by defendant. The defendant filed two pleas,—the first was *non assumpsit;* the second, set-off in the form of the common counts. To the first plea plaintiff added a *similiter,* and to the second he filed a general replication. Upon these issues the cause was tried.

Upon the trial the plaintiff introduced in evidence the note sued on with its indorsements and the record of its protest, and also proved defendant's signature, and rested. Defendant then testified, over the objection of plain-

---

[1] A drawee who is induced to accept by the fraudulent representations of the drawer cannot set up the defense of want of consideration against a *bona fide* holder for value, though he took before acceptance. Bank v. Carter, (Mass.) 25 N. E. Rep. 27. The purchaser of a negotiable instrument from a *bona fide* holder for value acquires the title of the innocent holder, though he himself may have had notice of infirmities in the instrument. Bodley v. Bank, (Kan.) 16 Pac. Rep. 88; Hill v. Scotland Co., 34 Fed. Rep. 208. But one who has notice of the fraud by which a note was procured from the maker cannot claim protection as an innocent purchaser because the note was actually purchased by his own agent, who had no notice of the fraud. Vosburgh v. Diefendorf, (N. Y.) 23 N. E. Rep. 801. The purchaser in good faith, before maturity, is not affected by the facts that the article in payment of which the note was given did not comply with the warranty, and that the payee agreed to rescind the contract. Coakley v. Christie, (Neb.) 31 N. W. Rep. 73. Where the owner of drafts indorses them in blank to an agent for collection, the agent can transfer them absolutely to a third person, having no actual notice of his want of ownership. Coors v. Bank, (Colo.) 23 Pac. Rep. 328. A note given without consideration cannot be enforced by a person to whom it is indorsed by the payee after maturity. Lipsmeier v. Vehslage, 29 Fed. Rep. 175. When it is shown that the note is tainted with fraud as between the parties, the burden is on the holder to show that he was a *bona fide* purchaser for value before maturity. Henry v. Sneed, (Mo.) 12 S. W. Rep. 663. After failure of consideration is shown, the burden is on the *bona fide* holder to show want of notice. Conley v. Winsor, (Mich.) 2 N. W. Rep. 31. See, also, Darrow v. Blake, (Iowa,) 13 N. W. Rep. 50; Wood v. Starling, (Mich.) 12 N. W. Rep. 866.

tiff, as follows: That he resided in Santa Fe, and carried on the business of jeweler on the plaza; he was acquainted with W. C. Bishop, and had been for two years; that during Bishop's residence in Santa Fe he made defendant's store his headquarters. On the evening of the 8th of June, Bishop went into defendant's store, and, in the presence of a workman and the partner of defendant, he told defendant that he had purchased a piece of property from Dr. Longwill, for which he had been paid $2,000, and exhibited to defendant a deed, and told defendant that he was liable to be called away that night, or in a day or two, but very probably that night, and he wished to sell the property he had purchased very cheap; that he would sell it to defendant for $300 over his bargain. Defendant replied that he did not know anything about the property; that he had never seen it, and did not like to invest in anything he knew nothing about. Bishop assured him that the property was worth the value; that the title was good; and he would only transfer it to the defendant on the condition that it was taken at once; that the deed must be made that night, or there would be no trade. Defendant attempted to argue the matter with Bishop, and finally turned away with the statement that he did not want to buy anything that he did not know anything about. This was about 8 o'clock, or after, in the evening. Bishop said it was a good bargain, and that he would sell it at that price for the reason that he had to go away. "He then stated that as an object to influence me to make a trade he would take in trade a set of diamonds that he had admired so much, for $750. They were marked $775." Defendant then told Bishop that he didn't have the money to pay for the balance. Bishop answered that it did not take so much money, as he had given a mortgage on it for $1,000, on which he had paid $50, leaving a balance of $950 due on a reasonable length of time, making payments easy. Defendant said that there was yet $600 difference, and he had no money to pay for it, and he did not want to buy property without seeing it. Bishop said he would take defendant's note on 30 days. Defendant said he objected to giving his note, on general principles, for the reason that he did not want his paper offered for sale on the street. Bishop, as a further inducement, promised that if defendant gave his note, he (Bishop) would keep it himself, and positively agreed not to part with it. On this condition defendant told him he would make the trade. Defendant says: "I made another objection, and I told him I would not buy the property until I had seen it, and asked him to wait until next morning to see it, and he answered, 'No, Mr. Hickox; this must be a trade now. I will not give you time until morning;' consequently it was a matter to decide at once. Mr. Bishop asked me to wait for twenty minutes, (it was then 8:30,) and he would bring the deed. He went out and remained three-quarters of an hour,—until 9:30. He brought the deed, and we made the exchange. I gave him the note and delivered him the diamonds. I would not have sold the diamonds for $750." Defendant further stated that he had no knowledge concerning the property, except that derived from Bishop; that Bishop remained in town several days after the trade; that defendant published a notice in the paper two days after the trade, and continued it for thirty days, concerning the note, but does not state what that notice was. On cross-examination defendant stated that the diamonds cost him between $400 and $500 in New York. He also stated that he had not paid the mortgage to Dr. Longwill.

There was evidence tending to show that the property was worth but $1,000; there was also evidence tending to show that it was worth $2,300. Dr. Longwill testified that he sold it to Bishop for $1,000. The deed, offered in evidence, from Longwill to Bishop, recited the consideration as $2,000. It was admitted on the trial that the conveyance from Bishop to the defendant recited a consideration of $2,300, and that such conveyance was made, by its terms, subject to a mortgage of $1,000, held by Longwill. This admission was made subject to the objection that the facts embraced were incompetent and imma-

terial on the trial. At the close of the testimony plaintiff asked the court to instruct the jury to find for the plaintiff. The defendant asked that the cause be submitted to the jury upon the evidence. The court instructed the jury that the evidence offered for the defendant was not sufficient to require the plaintiff to show that value was paid for the note by the plaintiff, and that they should return a verdict for the amount of the note, with interest at 6 per cent. per annum from maturity, and with fees of protest. To this instruction defendant excepted. There was a verdict and judgment in accordance with the instruction; a motion for new trial was made and overruled, and the defendant brings the case here by a writ of error.

The propriety of this instruction is the only matter presented for review. Defendant contends that the evidence shows that the note was obtained by fraud and imposition, and therefore the burden was on the plaintiff to show that it paid value for the note before maturity. In the case of *Collins* v. *Gilbert*, 94 U. S. 753, it is said: "Transferees of a negotiable instrument, such as a bill of exchange, or promissory note payable subsequent to its date, hold the instrument clothed with the presumption that it was negotiated for value, in the usual course of business, at the time of its execution, and without notice of any equities between the prior parties to the instrument. Possession of such an instrument payable to bearer or indorsed in blank, is *prima facie* evidence that the holder is the proper owner and lawful possessor of the same; and nothing short of fraud, not even gross negligence, is, unattended with *mala fides*, sufficient to overcome the effect of that evidence, or to invalidate the title of the holder supported by the presumption. Apply that rule in a suit in the name of the transferee against the maker, and it is clear he has nothing to do in the opening of his case except to prove the signatures to the instrument, and introduce the same in evidence, as the instrument goes to the jury clothed with the presumption that the plaintiff became the holder of the same for value, at its date, in the usual course of business, without notice of anything to impeach his title. Clothed as the instrument is with those presumptions, the plaintiff is not bound to introduce any evidence to show that he gave value for the same, until the other party has clearly proved that the consideration of the instrument was illegal, or that it was fraudulent in its inception, or that it had been lost or stolen before it came to the possession of the holder." A large number of authorities are cited in support of this position. While it is true that the evidence of defendant tends to show that Bishop uttered a falsehood as to what the property cost him, the evidence wholly fails to show that defendant relied upon this statement solely, and was induced thereby to purchase the property. He says the inducement was that Bishop would take as part payment diamonds at the price of $750, which cost between $400 and $500, and also retain the note himself. In the case of *Collins* v. *Gilbert, supra*, the defendant had given to Collins & Co., the transferrers, an acceptance which they agreed to hold as security, but which they, in violation of their agreement, transferred to the plaintiff. The defendant, under a plea of the general issue, sought to show the agreement, which was denied him, and on appeal the judgment was affirmed. So far as the agreement on the part of Bishop to hold the note is concerned, the ruling in the case cited is conclusive that it did not constitute fraud in the inception of this note. The only other inducement upon which defendant relied in the transaction was that by the sale of the diamonds he was enabled to make a profit of several hundred dollars. This certainly was not fraud to his prejudice. Fraud sufficient to put the holder of negotiable paper, before maturity and without notice, to the proof that he paid value for it, must be clearly proved, and must consist of such misrepresentations of fact as were calculated to and did mislead the maker to his injury, and concerning the truth of which the maker had no knowledge nor means of knowledge, and upon which he implicitly relied, and which constituted the inducement to the transaction. Such misrepresen-

tations must be of such a character as would authorize a court of equity to annul the instrument in a direct proceeding for that purpose. In the case of *Slaughter* v. *Gerson*, 13 Wall. 379, the court says: "The misrepresentation which will vitiate a contract of sale and prevent a court of equity from aiding its enforcement must not only relate to a material matter constituting an inducement to the contract, but it must relate to a matter respecting which the complaining party did not possess at hand the means of knowledge, and it must be a misrepresentation upon which he relied, and by which he was actually misled, to his injury. A court of equity will not undertake, any more than a court of law, to relieve a party from the consequences of his own inattention and carelessness."

The evidence shows that defendant was unwilling to rely upon the statements of Bishop as to the value of the property, and insisted upon being allowed time in which to examine it for himself. The fair deduction from his testimony is that he yielded to Bishop's solicitations merely because Bishop informed him that if he did not take the property then, he could not get it at all, and the further fact that Bishop would take the diamonds. The property was situated in Santa Fe, both parties lived in Santa Fe, and from all that appears in evidence Bishop's grantor, to whom he claimed to have paid $2,000 for the property, was easily accessible; and, if defendant had exercised the prudence and caution necessary to relieve him from the imputation of negligence, he could have ascertained the fact without difficulty. This being true, he stands in no position to impeach the validity of negotiable paper which he has voluntarily put in circulation, and which has gone into the hands of a *bona fide* purchaser without notice. From this it is clear that there was not such fraud in the inception of the note as to cast the burden of showing that plaintiff had paid value for it upon plaintiff, and does not bring this case within the principle announced in *Stewart* v. *Lansing*, 104 U. S. 505, cited by plaintiff in error.

The doctrine that if there is a *scintilla* of evidence tending to support the cause of action or defense it must be left to the jury, has never obtained in this territory. Our courts have uniformly followed the rule of the federal courts, that, if the court is satisfied that, conceding all the facts to be true, which the jury might reasonably infer from the evidence, they would not warrant a particular verdict, the court may instruct the jury to that effect. *Pleasants* v. *Fant*, 22 Wall. 116; *Railroad Co.* v. *Fraloff*, 100 U. S. 24. As we have seen, the testimony in this case would not have justified the jury in finding that the note was procured by Bishop from defendant under such circumstances as to constitute fraud. Therefore the instruction given was proper.

Finding no error in the record, the judgment should be affirmed, and it is so ordered.

We concur: LONG, C. J.; HENDERSON, J.