SAMUEL W. HALE, RESPONDENT, *v.* WILLIAM P. SHANNON, APPELLANT, IMPLEADED WITH OTHERS.

*Negotiable paper — fraudulently obtained — a party seeking to enforce it must show that he is a* bona fide *purchaser for value.*

Where, in an action brought to recover upon certain negotiable notes, it appears that before the notes came into the hands of the plaintiff they had been fraudulently obtained and unlawfully diverted from the purposes for which they were made, the plaintiff is bound to prove that he has given value therefor and is a *bona fide* purchaser thereof in the usual course of business.

APPEAL by the defendant William P. Shannon from a judgment of the Supreme Court, entered in the office of the clerk of the county of New York on March 12, 1890, after a trial at the New York Circuit before the court and a jury, at which a verdict was directed by the court, in favor of the plaintiff, for $13,432.20.

*E. F. Bullard*, for the appellant.

*J. P. Osborne*, for the respondent.

BRADY, J. :

This action was based upon four promissory notes drawn by the defendants Shannon & Bullock, dated May 19. 1882, whereby they jointly and severally promised to pay to their own order, for value received, four several sums of $2,287.50, aggregating $9,150. They were indorsed, as alleged, before maturity to the defendant

Payne, and by him before maturity, and after they had been so indorsed, and after indorsement by himself for value, delivered to the plaintiff. The defendant Shannon only was served with the summons and complaint. He defended upon the ground that he had been induced by Payne to give the notes in payment for certain shares of stock and by representations which were false and fraudulent, and so designed to be in order to get the notes. Payne represented himself to be owner of the stock, but was not, in fact, and the fraud was accomplished, for he knew he was not the owner of any stock; knew what he said on that subject to be utterly without foundation; made the representation to obtain the notes therefor, intentionally, knowing well that he was falsifying and intending to do so with an object in view. There can be no doubt that on such a state of facts, as between him and the maker of the notes, they had no validity. Here all the elements demanded by the adjudications are present. The obstacle, however, in the defendant's path is that a third person has intervened in no way connected with the representations, so far as appears, and presumptively a holder for value. The possession of the notes which were, in form, negotiable and given for value received, as stated in them imports that they were acquired for value in the usual course of business, without notice of any circumstances impeaching their validity; that they are owned by the person possessing them, and, therefore, he can recover against all prior parties. (Daniel's Neg. Inst., vol. 1, § 812; *Collins* v. *Gilbert,* 94 U. S., 753; *Comrs.* v. *Clark,* Id. 285; *Brown* v. *Spofford,* 95 id. 478; to the same tenor, see Abbott's Trial Ev., p. 389.)

Assuming this to be the rule, is there aught in this case to relieve the defendant from its application to his defense? The plaintiff insists that even if it would be effective in case the defendant's obligation were not joint, yet being joint, he must proceed farther and show that no consideration was received by his joint maker Bullock. There is, it must be said, no direct testimony on that particular subject, and the presumption of value given may not have been overcome. *Kinsman* v. *Birdsall* (2 E. D. Smith, 395) is an authority on that proposition. See, also, Randolph on Commercial Paper (vol. 2, p. 5, § 447), in which it is said : " A joint note implies a joint consideration." See, also, Abbott's Trial Evidence (p. 442),

in which the author says : " It is not sufficient for one of several joint makers of a note to show that he received no consideration. He must show that neither of the others did." (See, also, Daniels on Negotiable Instruments, vol. 1, pp. 94-105 ; Tiedeman on Commercial Paper, §§ 156, 157.)

This rule is not so imperative, however, that facts and circumstances tending to overcome the implication of a joint consideration may not be invoked, at least so far as to make it necessary to submit the issue of value to the jury. Do they present themselves here ? It appears that Bullock, the joint maker, was a friend of Payne's and a relative of one Andrews, who was the manager in possession of the company, the stock of which Payne sold. The defendant had not known Bullock very long, not longer, indeed, than he had known Payne ; and there is no reason apparent why Bullock joined with the defendant in the note, unless it was to assist Payne in consummating the fraud. The stock which the notes were designed to purchase was to be the property of the defendant, not Bullock. He was to purchase it and to pay for it, and Bullock, except as a figure-head or conspirator, seems to have no relation to the transaction. When the notes were given the arrangement between the defendant and Payne was thus expressed : " If (said Payne) you will give me long notes for it, the company will be able to make the money, and as they make it you can take up the notes and I will deliver you the stock." And again : " I will deliver you the stock as the notes are paid, as they come due and are paid; I will hold the notes and present them to you myself, and they wont pass out of my hands, so that when they are due I will bring the notes and the stock to you." Thereupon the defendant said, " All right, I will do it." He also said that the stock was not delivered to him, an incident which was a part of the scheme in aid, it would seem, of Payne, who had not the stock to deliver, and, therefore, his peculiar proposition. The notes, as already suggested, were fraudulently obtained and unlawfully diverted, Payne having agreed to hold them and to part from them only to the defendant, and on their gradual payment by the profits to be derived from the stock. Under all these circumstances, the request to go to the jury on the question whether any consideration had been given for the notes should have been granted. There was enough shown to put the plaintiff to

proof of value given, the *bona fides* of the transaction out of which they grew having been successfully assailed, the notes diverted, and it having at least been *prima facie* established that the other maker, Bullock, had not received any consideration for the notes, the whole consideration, if any, having been received by the defendant. The refusal of the court to submit the question stated to the jury was error, the learned counsel for the defendant having coupled his request with the contention that the plaintiff was placed by the evidence in such attitude that he was bound to show value given and a purchase in the usual course of business.

The judgment, for these reasons, should be reversed and a new trial granted, with costs to abide the event.

Van Brunt, P. J.:

I concur in the result. The note having been obtained by fraud, the plaintiff was bound to prove himself a *bona fide* holder for value. (*Harger* v. *Worrall*, 69 N. Y., 370.)

Daniels, J.:

The evidence did not prove that the note had been received for value. That seems to be a mistake in the statement of the case. And as it had been obtained by fraudulent representations, the action could not be maintained without proof that the plaintiff had become a holder for value. A new trial should be directed.

Judgment reversed and new trial ordered, with costs to abide event.