MATHIESON et al. v. CRAVEN et al.

(Circuit Court, D. Delaware. June 1, 1908.)

No. 271.

**1. EQUITY (§ 93*)—PARTIES.**

A distinction has been recognized between necessary and indispensable parties for the purpose of ascertaining whether some of those who under well-established rules of equity pleading and practice were deemed necessary, may not, under existing rules governing pleading and practice in equity, be dispensed with as parties in order that equitable relief in a given case may not wholly fail.

[Ed. Note.—For other cases, see Equity, Cent. Dig. §§ 252-259; Dec. Dig. § 93.*]

**2. EQUITY (§ 93*)—INDISPENSABLE PARTIES.**

Persons whose presence in a suit as parties is essential to the granting of the relief sought, and whose absence would render impossible or nugatory any decree for such relief, are indispensable in contradistinction to necessary parties.

[Ed. Note.—For other cases, see Equity, Cent. Dig. §§ 252-259; Dec. Dig. § 93.*]

**3. EQUITY (§ 219*)—FAILURE TO SERVE DEFENDANT—DEMURRER.**

A demurrer to a bill cannot be sustained on the ground that one against whom process is prayed as a co-defendant and whose presence is essential to the relief prayed, has not been served and has not appeared; for non constat that he will not be so served or voluntarily appear.

[Ed. Note.—For other cases, see Equity, Dec. Dig. § 219.*]

**4. COURTS (§ 316*) — FEDERAL COURTS — JURISDICTION—DIVERSITY OF CITIZENSHIP.**

Where two persons, entitled to separable although precisely similar claims charged on real estate, joined in a bill for the enforcement of their liens, and the bill was amended by omitting one of such persons in order that it might not fail for want of the requisite diversity of citizenship, and the suit was prosecuted by the other for the enforcement of her own claim, the amended bill stating that the person omitted "consents to the relief sought in this bill and to all proceedings had and to all orders or decrees made or that may be made by the court in this case," *held*, that the circumstances did not disclose collusion and that the bill as amended was not demurrable.

[Ed. Note.—For other cases, see Courts, Dec. Dig. § 316.*

Diverse citizenship as a ground of federal jurisdiction, see note to Shipp v. Williams, 10 C. C. A. 249; Mason v. Dullagham, 27 C. C. A. 298.]

(Syllabus by the Court.)

In Equity.

David T. Marvel, Josiah Marvel, and Walter J. Willis, for complainants.

John H. Rodney, John Biggs, J. Frank Biggs, and Josiah O. Wolcott, for certain defendants.

BRADFORD, District Judge. Thomas Jamison made his will June 3, 1864, and died on or about December 8, 1864. His son Albert Jamison died without issue on or about July 2, 1864. Thomas Jamison left to survive him three sons, Edgar Jamison, Clarence Jamison and Oliver V. Jamison. Edgar Jamison died on or about May 1, 1886, leaving to survive him two children, Vesta L. Jamison, now intermarried with James D. Bastian, and Catherine P. Jamison, now intermarried with

George F. Mathieson. The amended bill is filed by Catherine P. Mathieson and George F. Mathieson, and states:

"That the said Vesta L. Bastian consents to the relief sought in this bill and to all proceedings had and to all orders or decrees made or that may be made by the court in this cause."

Thomas Jamison at the time of his death was possessed of certain personal property and seized in fee of three tracts of land, viz: (1) The "Jamison Corner Farm," of about two hundred acres; (2) the "Capelle Farm," of about two hundred and twelve acres, and (3) the "Homestead Farm," of about two hundred and thirty acres, all situate in New Castle County, Delaware. The testator after making sundry bequests, unnecessary to be considered in this connection, and creating a charge of $4,000 on the "Jamison Corner Farm," devised that farm, subject to the charge, in trust, to permit Albert Jamison, who died in the testator's lifetime, to "use, occupy, rent and receive the rents, issues and profits of said farm during the term of his natural life, for his proper use and benefit," remainder, in case of the death of Albert Jamison without leaving issue, to the testator's sons, Edgar, Clarence and Oliver "and their issue, the heirs and assigns of such issue, subject to the same conditions and limitations as their own shares are respectively subject to, under this will." The testator devised the "Capelle Farm" and the "Homestead Farm" in trust, to rent the same and collect, expend and invest the rents as thereinafter provided, "until the majority of my youngest son who shall live to attain the age of twenty-one years" and thereupon to "raise out of or charge upon the said farms respectively, such sum or sums as shall be necessary to make equal the shares of my sons Edgar, Clarence and Oliver as hereinafter provided, and subject to such charge and conditions"; and in further trust, to permit and suffer "my son Clarence to use, occupy and rent and to receive the rents, issues and profits of the said 'Capelle Farm' during the term of his natural life for his proper use and benefit, and in case of the death of the said Clarence leaving a child or children, or the issue of such, remainder to such child or children, or the issue of such, their heirs and assigns, free and discharged from the aforesaid trust"; and in further trust, to permit and suffer "my son Oliver to use, occupy and rent, and to receive the rents, issues and profits of the said 'Homestead Farm' during the term of his natural life for his proper use and benefit, and in case of the death of the said Oliver leaving a child or children, or the issue of such, remainder to such child or children, or the issue of such, their heirs and assigns, free and discharged from the aforesaid trust." The testator also undertook to create a trust in "my said executor and the guardian hereinafter named and appointed for my minor children * * * to invest all the rest and residue of my estate, not herein otherwise disposed of in bonds and mortgages as aforesaid, interest payable semi-annually and keep the same so invested until the majority of my youngest son who shall live to attain the age of twenty one years," and thereupon he desired "my trustees aforesaid to have the said 'Capelle Farm' and the said 'Homestead Farm' valued at their just and true value in money by three substantial men of the neighborhood, and that to such valuation the trustees shall add the four

thousand dollars and all interest accrued thereon which hereinbefore is charged upon the 'Jamison Corner Farm' and all the rest and residue of my estate invested as first directed in this item and also any other legacies or devises to which my said sons Edgar, Clarence and Oliver may become entitled, and the aggregate sum thus ascertained to apportion in equal shares among my sons Edgar, Clarence and Oliver, and their issue, the issue in all cases taking their parents share." He further provided that "in the said apportionment my said son Clarence to take the said 'Capelle Farm' with such incumbrances or additions as may be necessary to equalize the shares of the said Edgar, Clarence and Oliver, and the said Oliver to take the 'Homestead Farm' with such like incumbrance or addition, but the share of the said Edgar shall be in money invested in good bonds and mortgages as aforesaid, the interest payable to him, after such apportionment, semi-annually during his natural life and from and immediately after his death the principal and all interest accrued thereon payable to his child or children, or the issue of such." He further provided that "the rents and profits arising from the Capelle and Homestead farms and the interest of all sums invested as in this Item prescribed, and so much thereof as shall be necessary shall be expended by the said guardian in the maintenance and education of my said sons, Edgar, Clarence and Oliver" and that the residue, if any, should be "invested for their benefit, first deducting yearly a sum not exceeding one hundred and fifty dollars, to be expended on each of the said farms, to keep the same productive and in good condition." He further provided that "in case of the death of any of my said sons Edgar, Clarence and Oliver without leaving any child or children, or the issue of such, the share of the one so dying shall go to the survivor or survivors, and the issue of such as may be deceased, subject to the same conditions and limitations as their own shares respectively, hereinbefore designated." He further provided that "it is my will and I hereby appoint and request my esteemed friend          shall have the guardianship of any child or children living at my decease during the minority of such" and "I nominate and appoint my valued friend Thomas J. Craven my executor and the said executor and guardian, trustees to effectuate the trusts hereinbefore set forth and declared." Oliver V. Jamison, the youngest son of the testator, attained his majority May 1, 1878, and is one of the parties defendant in this suit. Letters testamentary were granted to Thomas J. Craven who was appointed both executor and trustee by the testator, and Craven duly qualified, and undertook the administration of the decedent's estate and accepted the trusts imposed on him by the will. All of the debts and funeral expenses of the testator have been paid by the executor, who also has paid all legacies mentioned in the will except that to Edgar Jamison and his children, Mrs. Mathieson and Mrs. Bastian. Craven, the trustee, soon after Oliver V. Jamison attained his majority, had the "Capelle Farm," the "Homestead Farm" and the "Jamison Corner Farm" valued at their "just and true value in money" by "three substantial men of the neighborhood," the valuation according to the information and belief of the complainants of each of the farms being "upwards of twelve thousand dollars." The amount of the valuation made of the three farms is

unknown to the complainants "other than that they are informed and therefore believe that said valuation was placed at upwards of $36,000." The bill then avers in substance that the above mentioned sum of $4,000 directed to be raised out of the "Jamison Corner Farm" and the other sums of money, to be raised respectively out of that farm, the "Capelle Farm" and the "Homestead Farm," necessary to equalize the shares of Edgar Jamison, Clarence Jamison and Oliver V. Jamison "so that the said Edgar Jamison's share would be in money," as provided in the will of Thomas Jamison, were first equitable liens upon those farms from and after the death of the testator; and that the moneys so charged upon the farms were never raised by the executor or trustee, and have never been received in whole or in part by Mrs. Mathieson and Mrs. Bastian, or either of them, and neither they nor either of them have or has released or discharged "the said lands from the said charges or liens," and that the principal of the moneys so charged, together with interest from the death of Edgar Jamison, is now due and payable to them, share and share alike. And, further, that neither the complainants and Mrs. Bastian and her husband, James D. Bastian, nor any of them "ever knew that they were entitled to any interest or estate out of the estate of the said Thomas Jamison until about six months prior to the filing of this bill." The bill also contains allegations, not material to consider at this time, touching the present ownership and occupation of the above mentioned premises, and a certain mortgage held by the Girard Trust Company of Philadelphia against the "Capelle Farm." The second, third and tenth prayers of the amended bill are as follows:

"Second: That the amount due the said Catherine P. Mathieson, both principal and interest, upon the legacy or legacies devised as aforesaid, in and by' the will of the said Thomas Jamison, be ascertained and that the said amount when so ascertained be declared to be an equitable lien upon the tracts or parcels of land described as the 'Jamison Corner Farm,' the 'Capelle Farm,' and the 'Homestead Farm' as aforesaid, respectively, and in the proportions as provided in the said will.

"Third: That an account may be taken of what is due said Catherine P. Mathieson, both principal and interest, upon the legacy or legacies devised as aforesaid, in and by the will of the said Thomas Jamison, and that the said amount, when so ascertained, be declared to be an equitable lien upon the tracts or parcels of land described as the 'Jamison Corner Farm,' the 'Capelle Farm' and the 'Homestead Farm' as aforesaid respectively, and in the proportions as provided in the said will.

\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*

"Tenth: That the said Thomas J. Craven, trustee, be ordered and directed to raise out of each of the said tracts or parcels of land the sum ascertained to be due said Catherine P. Mathieson and charged respectively upon the said several tracts or parcels of land, or that a trustee be appointed and directed to so raise said amounts due said Catherine P. Mathieson out of the said lands, by sale, mortgage or otherwise, as the court may direct, within three months."

The fourth, fifth and sixth prayers are to the effect that the amounts found due to Mrs. Mathieson on taking an account of the several sums charged against the farms in order to "equalize the shares of the said Edgar Jamison, Clarence Jamison and Oliver V. Jamison, as provided for in the said will," be declared equitable liens thereon "from and after the death of the said testator." The bill also prays for other

and further relief. It is unnecessary now to allude to other prayers of the bill.

Such of the defendants as have appeared have demurred to the amended bill on a number of grounds. In substance, the first is that the bill is without equity, and the last that the defendants, if answerable at all, are answerable only to Thomas J. Craven as trustee under the will of Thomas Jamison. With respect to the first ground, this court is not prepared to hold at this time that the bill, aside from the other grounds of demurrer, is without equity. Whatever questions may arise touching the equity of the bill—and it is possible there may be some requiring serious attention at the proper time—may more intelligently and safely be determined on final hearing and should, therefore, in the exercise of a sound discretion, under the settled practice of this and other courts of equity, be reserved for future consideration. The last ground is clearly untenable. If Mrs. Mathieson has a lien, as she asserts, failure on the part of the trustee to proceed against the defendants to enforce it for her benefit affords no reason why she should be denied a remedy in a court of equity. The remaining grounds of demurrer are, in substance, to the effect that it is necessary and indispensable to the maintenance of this suit, first, that Mrs. Bastian and her husband should be parties; second, that the personal representative of Edgar Jamison should be a party; and, third, that Thomas J. Craven, executor and trustee, should be a party, but cannot be made such, this court not having jurisdiction over him and he residing in New Jersey "not being capable of being brought into court." It will be convenient to take up these three points in their reverse order. Persons legitimately made parties to suits in equity may belong to three classes: First, proper parties, second, necessary parties, and, third, indispensable parties. The phrases proper parties, necessary parties and indispensable parties, in their technical sense, are distinguishable from one another, each denoting a separate and independent class. But in a broader sense the first is the most and the last the least comprehensive class; for proper parties may or may not be either necessary or indispensable, and necessary parties may or may not be indispensable. In the same broad sense an indispensable party is both a necessary and a proper party, and, though a necessary party may or may not be indispensable, he is nevertheless a proper party. The distinction between a necessary and an indispensable party, while doing violence to the English language in its usual acceptation, has been recognized for the purpose of determining the question whether some of those who under the well-established rules of equity pleading and practice were deemed necessary parties, may not, under existing rules governing pleading and practice in equity, be dispensed with as parties in order that equitable relief in a given case may not wholly fail. Equity rule 47, promulgated by the Supreme Court, is as follows:

"In all cases where it shall appear to the court that persons, who might otherwise be deemed necessary or proper parties to the suit, cannot be made parties by reason of their being out of the jurisdiction of the court, or incapable otherwise of being made parties, or because their joinder would oust the jurisdiction of the court as to the parties before the court, the court may

in their discretion proceed in the cause without making such persons parties; and in such cases the decree shall be without prejudice to the rights of the absent parties."

This rule confers discretionary power on the court in the cases specified to dispense with the presence of persons who otherwise would be deemed necessary or proper parties, to the end that justice may not be defeated. But it does not, and in reason could not, apply to those whose presence as parties is essential to the granting of the relief sought and whose absence would render impossible or nugatory any decree for such relief. Nor is there anything in section 8 of the act of March 3, 1875 (18 Stat. 472, c. 137), relating to the jurisdiction of the Circuit Courts of the United States, as amended by Act March 3, 1887, c. 373, 24 Stat. 552, and Act Aug. 13, 1888, c. 866, 25 Stat. 433 (U. S. Comp. St. 1901, p. 513), to countenance the idea that an indispensable party may be dispensed with in the suits therein referred to. That section provides, among other things, that, when in any suit commenced in a Circuit Court to enforce a legal or equitable lien on real estate within the district where such suit is brought "one or more of the defendants therein shall not be an inhabitant of, or found within, the said district, or shall not voluntarily appear thereto, it shall be lawful for the court to make an order directing such absent defendant or defendants to appear, plead, answer or demur, by a day certain to be designated," which order shall, if practicable, be served on such defendant or defendants wherever found, but, if not practicable, shall be published as in the section provided; and, in case of the failure of such defendant or defendants to appear, plead, answer or demur, as ordered, the court may "entertain jurisdiction, and proceed to the hearing and adjudication of such suit in the same manner as if such absent defendant had been served with process within the said district." In conferring power on the court, in case of such failure by a defendant after service or publication of such order, to hear and determine the suit "in the same manner as if such absent defendant had been served with process within the said district," it must be assumed that Congress did not intend or contemplate the performance by the court of an impossibility, namely, the granting of relief in the absence of one whose presence as a party is indispensable to that end, but rather that the intention was that the court should, only if practicable, dispose of the suit in the same manner as if proper service of process had been made. A different interpretation of the provision would create an absurdity. On the question whether Craven as executor or trustee is an indispensable party in the case made by the bill there is little or no room for doubt. The portion of the estate of the testator to which it is claimed Mrs. Mathieson and Mrs. Bastian as children of Edgar Jamison are entitled in equal shares, is directed in the will to consist wholly of money invested in bonds and mortgages; and that portion is to be equal to the value of the portion devised and bequeathed to Clarence Jamison or Oliver V. Jamison. The amount of the portion, one half of which is claimed in the bill, was to be ascertained by adding to the value of the real estate devised to Clarence Jamison and Oliver V. Jamison the sum of $4,000 and its interest,

charged upon the "Jamison Corner Farm" and the amount of the rest and residue of the testator's estate directed by him to be invested in bonds and mortgages, mentioned in the clause of the will in which provision is made for the valuation of the testator's real estate. The aggregate amount thus arrived at is directed in the will to be divided into three equal portions of which one, invested in bonds and mortgages, was to go after the death of Edgar Jamison to his children, and the other two to Clarence Jamison and Oliver V. Jamison respectively. In order to effectuate this purpose provision was made by the testator for raising out of or charging upon the real estate devised to Clarence and Oliver or adding to the value thereof, such sums as should be necessary to equalize the three portions. The bill alleges that all the debts and funeral expenses of the testator and all the legacies bequeathed by him were fully paid by Craven, the executor, save what was bequeathed to Edgar Jamison and his children. But it nowhere states the amount of the rest and residue to be invested in bonds and mortgages, as above mentioned, which was to enter into the computation and ascertainment of the portion to be shared equally by Mrs. Mathieson and Mrs. Bastian, nor does it aver that Craven as executor or as trustee under the will at any time passed or rendered any account or statement showing the amount of such rest and residue; and on the principle that pleadings are to be taken most strongly against the pleader it is not to be assumed that there was no such residue. It is alleged that the bill is filed "to enforce an equitable lien upon the said real property for such sums of money as may be found due and payable to the said Catherine P. Mathieson under and by virtue of the will of the said Thomas Jamison, deceased," and the bill prays among other things, that an account may be taken of what is due to her under the legacy or legacies devised as aforesaid, and that "the amount when so ascertained may be declared to be an equitable lien" upon the "Jamison Corner Farm," the "Capelle Farm" and the "Homestead Farm" in "the proportions as provided in the said will," and that "Thomas J. Craven, trustee, be ordered and directed to raise out of each of the said tracts or parcels of land the sum ascertained to be due said Catherine P. Mathieson and charged respectively upon the said several tracts or parcels of land, or that a trustee be appointed and directed to so raise said amounts due said Catherine P. Mathieson out of the said lands by sale, mortgage or otherwise, as the court may direct, within three months." If the share of Mrs. Mathieson were ascertained in amount, and it also appeared in what parts or proportions it is to be raised from the several tracts of land respectively, it might be that this court would have power in the absence of Craven to decree a sale by a master or trustee of its own appointment to satisfy such share. But before any lien on real estate in favor of Mrs. Mathieson can be enforced it is necessary to determine its amount. It is also evident that the owners of the land devised to Clarence Jamison and Oliver V. Jamison are directly interested in the ascertainment of the amount of the "rest and residue"; for the sums chargeable against such lands will be less, if such amount be greater, and greater if such amount be less. It is a necessary condition to the granting of the relief sought

that there should have been or should be an accounting by the executor. or other person having the execution of the will of Thomas Jamison, showing the amount of such residue, and Craven as executor, if not as trustee, is therefore, under existing facts, an indispensable party, without whose presence this suit must either fail or be held in abeyance. But the ground of demurrer that Craven, being an indispensable party, cannot be brought into court is untenable. Both as trustee and as executor he has been named in the bill as a party defendant, process is prayed against him, and non constat but that although a nonresident of Delaware he will voluntarily appear or service of process may be made on him. However vital his presence in this court hereafter may be, the fact that being an indispensable party he is a nonresident is no legitimate ground of demurrer.

The ground of demurrer next to be considered is that the personal representative of Edgar Jamison has not been made a party. The will of Thomas Jamison provides:

"The share of the said Edgar shall be in money invested in good bonds and mortgages as aforesaid, the interest payable to him, after such apportionment semi-annually during his natural life and from and immediately after his death the principal and all interest accrued thereon payable to his child or children or the issue of such."

The interest last mentioned in the above clause, when considered as a whole, must to avoid repugnancy be held to mean interest accruing on the principal fund after the death of the life beneficiary, and not forming part of his estate. Further, it is to be observed that it does not appear from the bill that the contemplated apportionment was made during the lifetime of Edgar Jamison or at any time since. In so far as the relief sought in this suit involves the principal fund last referred to or its interest, no claim is made by Mrs. Mathieson against the estate of her father but solely under the will of Thomas Jamison. The will further provides, as before stated, in substance, that the "Jamison Corner Farm," on the death of Albert Jamison without leaving issue should go to his brothers, Edgar, Clarence and Oliver V. Jamison "and their issue, the heirs and assigns of such issue, subject to the same conditions and limitations as their own shares are respectively subject to under this will." It is not necessary at this stage of the case to decide or consider what effect, if any, the death of Albert Jamison during the lifetime of the testator had upon the devolution or disposition to be. made of the "Jamison Corner Farm." Whether that farm passed to Edgar, Clarence and Oliver V. Jamison, and their issue, under the will, or, subject to the $4,000 charge, descended in fee to all the children of Thomas Jamison, or constituted a part of the "rest and residue" of the testator's estate which was to enter into the share of Edgar Jamison, are questions the solution of which can in no way require the presence of the personal representative of Edgar Jamison as an indispensable or necessary party. If the farm passed under the will to the testator's sons and their issue, or formed a portion of the rest and residue which, under the will, was to enter into Edgar's share, Mrs. Mathieson does not claim as legatee or distributee of the estate of her father, but solely under the will of her grandfather, Thomas Jamison; and the personal representative of her father's estate would

not be an indispensable, necessary or even proper party to the suit. So, if the farm, subject to the $4,000 charge, descended in fee to all the children of Thomas Jamison, his will, save as to that charge, was wholly inoperative upon it, and, while the raising of the $4,000 might be enforced in this suit as a charge created by him paramount to any claim against the farm created or suffered by any persons after his death, no claim, aside from the charge of $4,000, could successfully be asserted in this suit against such farm; and thus, on the last assumption also, the presence of the personal representative of Edgar Jamison as a party is neither indispensable nor necessary. The circumstance, if it be a fact, that the "Jamison Corner Farm" descended, subject to the $4,000 charge, to the children of Thomas Jamison, while preventing the granting of the full measure of relief prayed, cannot defeat this suit in so far as it involves property of the testator other than that farm. The demurrer is to the whole bill, and cannot be sustained if on the face of the bill it appears that the complainant is entitled to any of the relief prayed. The second ground of demurrer must, therefore, be overruled.

The remaining ground of demurrer is, in substance, that it is indispensable to the maintenance of this suit that Mrs. Bastian and her husband should be parties. It appears from the amended bill that Mrs. Bastian, as one of the children of Edgar Jamison, is entitled, if entitled at all, to precisely the same measure and kind of relief as Mrs. Mathieson. The claims of Mrs. Mathieson and Mrs. Bastian do not in any sense constitute a joint demand on their part against the estate of Thomas Jamison, but are clearly separable from each other. The reasons urged in support of the ground of demurrer now under consideration are substantially as follows: (1) That the place of residence and citizenship of Mrs. Bastian does not appear and no excuse is shown for omitting her as a party; (2) that in order to ascertain what is due to Mrs. Mathieson an account must be taken of what is due to both her and Mrs. Bastian, as the former, if entitled to anything, has a claim to just one half of what is coming to both; (3) that Mrs. Bastian should be a party to any account that may be taken at the instance of Mrs. Mathieson in order that the defendants may be secured thereafter from being compelled by Mrs. Bastian to account for what may be due to her; and (4) that should a sale of the real estate be effected under a decree of this court rendered in the absence of Mrs. Bastian the purchaser would acquire the land subject to her lien claim, unascertained in amount, which would constitute a cloud upon the title. The first reason contains an unwarranted assumption; for it appears from the amended bill that Mrs. Bastian and her husband are citizens of Pennsylvania, which fact furnishes sufficient excuse for omitting them from the bill to avoid defeating the jurisdiction of this court over this suit. The second and third reasons may be considered together. It is true that the ascertainment of what is due to Mrs. Mathieson involves primarily an ascertainment of what is due to both Mrs. Bastian and Mrs. Mathieson; and it is also true that, other things being equal, Mrs. Bastian should be a party in order that the defendants should not be compelled to account to her separately from Mrs. Bastian. But these considerations do not of themselves show that Mrs. Bastian

is an indispensable party, whatever may be said of her as a necessary party. Payne v. Hook, 7 Wall. 425, 19 L. Ed. 260; Horn v. Lockhart, 17 Wall. 570, 21 L. Ed. 657; Hotel Co. v. Wade, 97 U. S. 13, 21, 24 L. Ed. 917; West v. Randall, Fed. Cas. No. 17,424; Wood v. Dummer, Fed. Cas. No. 17,944. In Payne v. Hook, supra, it was held that in a suit by one distributee of an intestate's estate against the administrator it was not indispensable that the other distributees be made parties, if the court could do justice to the parties before it without injury to absent parties equally interested. The court through Mr. Justice Davis said:

"But it is said the proper parties for a decree are not before the court, as the bill shows there are other distributees besides the complainant. It is undoubtedly true that all persons materially interested in the subject-matter of the suit should be made parties to it; but this rule, like all general rules, being founded in convenience, will yield whenever it is necessary that it should yield in order to accomplish the ends of justice. It will yield, if the court is able to proceed to a decree, and do justice to the parties before it, without injury to absent persons, equally interested in the litigation, but who cannot conveniently be made parties to the suit. The necessity for the relaxation of the rule is more especially apparent in the courts of the United States, where oftentimes, the enforcement of the rule would oust them of their jurisdiction, and deprive parties entitled to the interposition of a court of equity of any remedy whatever. * * * It can never be indispensable to make defendants of those against whom nothing is alleged and from whom no relief is asked. A court of equity adapts its decrees to the necessities of each case, and should the present suit terminate in a decree against the defendants, it is easy to do substantial justice to all the parties in interest and prevent a multiplicity of suits by allowing the other distributees, either through a reference to a master, or by some other proper proceeding, to come in and share in the benefit of the litigation."

In Hotel Co. v. Wade, supra, the court through Mr. Justice Clifford said:

"It is true, beyond doubt, that all persons materially interested in the fund to be distributed should be made parties to the litigation; but this rule, like all general rules, will yield whenever it becomes necessary that it should be modified in order to accomplish the ends of justice. Authorities everywhere agree that exceptions exist to the general rule; and this court decided that the general rule will yield if the court is able to proceed to a decree and do justice to the parties before the court, without injury to others not made parties, who are equally interested in the litigation. Payne v. Hook, 7 Wall. 425, 19 L. Ed. 260. Examples of the kind are put by Judge Story, in his work on Equity Pleading. Speaking of a bill brought by one of several residuary legatees for a final settlement and distribution of the estate of the testator or intestate, he says, all the residuary legatees or distributees ought in general be made parties; but he admits that, if some are out of the jurisdiction of the court and cannot conveniently be joined, the court will dispense with them, and proceed to decree the shares of those before the court, the rule being that the decree is conclusive only as to those who are parties to the litigation. Story, Eq. Pl. § 89; West v. Randall, 2 Mason, 193, Fed. Cas. No. 17,424; Wood v. Dummer, 3 Mason, 308, Fed. Cas. No. 17,944. Parties who are not named may intervene and make themselves actual parties, so long as the proceedings are in fieri and are not definitely closed by the course and practice of the court. Campbell and Others v. Railroad Co., 1 Woods, 369, Fed. Cas. No. 2,366."

In Williams v. Crabb, 117 Fed. 193, 54 C. C. A. 213, 59 L. R. A. 425, the Circuit Court of Appeals for the Seventh Circuit held that where one of the two heirs at law of a decedent had brought suit to set aside a will and a deed executed by the decedent for fraud and

undue influence, and to recover the complainant's share of the property, the other heir was not an indispensable party, as his joinder would have ousted the jurisdiction of the court. The court through Bunn, J., among other things, said:

"Nor can the objection prevail that Helen Alexander is not made a party defendant or a party complainant with her brother, having an equal interest in the estate of her sister with the complainant. She is not an indispensable party. * * * Nobody will be bound by any decree except the parties thereto. Without being joined as complainant, and without bringing suit on her own behalf, Helen Alexander's interest in the estate cannot be affected by a decree in favor of this complainant. The defendant Crabb cannot justly complain that the suit is not brought to recover the entire estate of Ellen Williams, rather than a one-half interest. The utmost consequence that could follow would be that the defendants might be subjected to another suit by Helen Alexander, but that would be no hardship compared with turning the complainant out of court, who would now, no doubt, be barred, under the statute, from commencing another action so far as the will is concerned."

As before stated, the claims of Mrs. Mathieson and Mrs. Bastian are separable in their nature and, while it might be more convenient, if the principles of jurisdiction permitted, that both should join as complainants in this suit in order to avoid a separate accounting in favor of Mrs. Bastian, the latter, nevertheless, is not indispensable to the suit as a party, and the former should not be denied redress in this court to which she may otherwise be entitled for the sake of relieving the defendant executor or trustee from subsequently and separately accounting to Mrs. Bastian. To the fourth reason, urged in support of the alleged indispensability of Mrs. Bastian as a party, to the effect that the purchaser of the real estate sold by direction of this court in her absence would acquire such real estate subject to a lien in her favor unascertained in amount and constituting a cloud on the title, the considerations applicable to the second and third reasons have pertinency. It is proper, also, to add that certain questions may or may not arise in this suit or certain proceedings hereafter be resorted to therein, the solution or effect of which may or may not tend to obviate the trouble to which it has been suggested the executor, trustee or purchaser may be put, if the bill in its present shape be maintained. It appears that Mrs. Bastian "consents to the relief sought in this bill and to all proceedings had and to all orders or decrees made or that may be made by the court in this cause," and further, that Mrs. Bastian originally joined as a co-complainant in this case to recover the separable claim made by her. Under these circumstances it is possible, if not probable, that she may apply so to intervene in the suit as to result in a sale of the real estate discharged from any lien in her favor and free from cloud or encumbrance on the title. Whether such intervention be permissible it would be premature to decide now. Or it may or may not be that under the circumstances the court may effect a sale of the real estate clear of the liens claimed by Mrs. Bastian and Mrs. Mathieson, or either of them, without a formal intervention by Mrs. Bastian. It would be unnecessary and improper to decide this point now. These questions and others which may be presented may more satisfactorily be passed on hereafter. It would be

imprudent to the last degree in deciding this demurrer to express an opinion on them.

It is also suggested rather than urged in support of the demurrer that Mrs. Bastian was dropped as a party from this suit by collusion with Mrs. Mathieson in order to confer jurisdiction. The court fails to perceive any justification for this suggestion. Mrs. Mathieson certainly had a right to sue in this court for the relief sought by her. It is equally certain that Mrs. Bastian did not have a right to sue as co-complainant for the relief sought by her, as jurisdiction would thereby be ousted. Mrs. Bastian, therefore, was dropped as a party and Mrs. Mathieson and her husband alone proceed for what she claims she is entitled to. The charge that it appears that Mrs. Mathieson was a party to any collusion obnoxious to the law or inconsistent with the principles of equity is wholly unfounded. On the whole I am satisfied that the demurrer should be overruled and the defendants required to plead or answer by the first Monday in July next, and it is so ordered, adjudged and decreed.